(No. 88454

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ANTHONY CRANE, Appellee.

*Opinion filed January 19, 2001.*

James E. Ryan, Attorney General, of Springfield, and
Richard A. Devine, State's Attorney, of Chicago (William
L. Browers, Assistant Attorney General, of Chicago, and
Renee Goldfarb and Kenneth T. McCurry, Assistant
State's Attorneys, of counsel), for the People.

Michael J. Pelletier, Deputy Defender, and Patricia
Mysza, Assistant Appellate Defender, of the Office of the
State Appellate Defender, of Chicago, for appellee.

JUSTICE McMORROW delivered the opinion of the
court:

We are asked to decide whether defendant Anthony
Crane's constitutional right to a speedy retrial was
violated when 26 months elapsed between the time the
appellate court reversed defendant's conviction for mur-
der and defendant filed his motion for dismissal on
speedy-retrial grounds. After balancing the opposing
interests in light of the circumstances of this case, we
conclude defendant's constitutional right to a speedy
retrial was not violated.

## BACKGROUND

Defendant was arrested on October 31, 1989, for pos-
session of drugs. While in custody, he was questioned
about a robbery and arson murder which occurred at

McHugh's tavern earlier that month. On the following day, defendant gave an assistant State's Attorney a signed, handwritten statement admitting to the arson murder. Defendant was tried in the circuit court of Cook County and convicted of aggravated arson and first degree murder and sentenced to natural life imprisonment.

On May 28, 1993, the appellate court reversed the convictions (*People v. Crane*, 244 Ill. App. 3d 721 (1993)), finding that the testimony presented at the suppression hearing failed to establish probable cause for defendant's arrest and, consequently, that the trial court erred when it denied defendant's motion to suppress his confession. Defendant's convictions were overturned and the matter was remanded for a new trial.

The State petitioned this court for leave to appeal. We denied the petition on October 6, 1993. *People v. Crane*, 152 Ill. 2d 566 (1993). The State then filed a petition for a writ of *certiorari* with the United States Supreme Court. The appellate court's mandate was recalled pending resolution of the State's petition. 155 Ill. 2d R. 368.

On February 28, 1994, the Unites States Supreme Court denied the State's application. Upon receiving notification of the denial, the appellate court's mandate should have been reissued. See 155 Ill. 2d R. 368. However, in this case the mandate was not transmitted to the circuit court until February 2, 1995.

After the mandate was received, the case was placed on the circuit court docket. On March 15, 1995, defendant made his first appearance before the trial court. On that date, defendant's attorney was unavailable and a continuance was granted to March 21, 1995. On March 21, 1995, defendant agreed to a May 31, 1995, trial date. On May 31, 1995, defendant answered ready and demanded trial. The case was continued on the State's mo-

tion until July 31, 1995. On July 31, 1995, defendant moved for dismissal of the charges against him, alleging the State violated his constitutional right to a speedy retrial because "more than a reasonable length of time has elapsed since cert was denied by the U.S. Supreme Court." Defendant also alleged his statutory right to a speedy retrial was violated because "more than 120 days has elapsed since [his] case was remanded." On September 7, 1995, the trial court denied defendant's motion for dismissal, giving no explanation for its decision.

After other pretrial issues were resolved, defendant's second trial commenced on October 15, 1996.[1] Defendant again was found guilty of first degree murder and aggravated arson. He later was sentenced to a term of 75 years' imprisonment on the murder conviction and a concurrent term of 30 years' imprisonment for the aggravated arson.

On appeal, the appellate court reversed defendant's convictions. 307 Ill. App. 3d 816. Applying the balancing test set forth in *Barker v. Wingo*, 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182 (1972), the appellate court ruled that defendant's constitutional right to a speedy retrial had been violated. In assessing defendant's claim, the appellate court held: the delay in bringing defendant to trial after his convictions were reversed—a period of 26 months until defendant moved for dismissal—was presumptively prejudicial; that defendant did not waive his right to a speedy trial by his inaction; and that defendant was severely prejudiced because he remained incarcerated during the entire 26-month period. In addition, the appellate court held the unexplained delay of 11 months, though not a deliberate attempt to circumvent defendant's speedy-trial rights, was unjustified. Based on this unexcused "lengthy delay," the appellate court

---

[1]Despite this additional 13-month delay, the record does not show that defendant renewed his speedy-trial claim.

concluded that defendant had been denied his constitutional right to a speedy trial and dismissed the indictment.

We granted the State's petition for leave to appeal. 177 Ill. 2d R. 315(a).

## ANALYSIS

Both the United States Constitution and the Constitution of Illinois guarantee to anyone accused of a crime the right to a speedy trial. See U.S. Const., amend. VI ("[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial"); Ill. Const. 1970, art. I, § 8 ("In criminal prosecutions, the accused shall have the right *** to have a speedy public trial by an impartial jury"). The sixth amendment right to a speedy trial is fundamental and, like other sixth amendment rights, is made applicable to the states by the due process clause of the fourteenth amendment. See *Klopfer v. North Carolina*, 386 U.S. 213, 18 L. Ed. 2d 1, 87 S. Ct. 988 (1967).

Although it had long been held that determining whether an accused had been denied the constitutional right to a speedy trial depended on "circumstances" (*Beavers v. Haubert*, 198 U.S. 77, 87, 49 L. Ed. 950, 954, 25 S. Ct. 573, 576 (1905)), in *Barker v. Wingo*, the United States Supreme Court recognized that there was a need to set out "criteria by which [a constitutional] speedy trial right is to be judged." *Barker*, 407 U.S. at 516, 33 L. Ed. 2d at 109, 92 S. Ct. at 2185. In doing so, the *Barker* Court analyzed the nature of the speedy-trial right and found it was "generically different" from other constitutionally guaranteed protections. *Barker*, 407 U.S. at 519, 33 L. Ed. 2d at 110, 92 S. Ct. at 2186. One reason is because "there is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused." *Barker*, 407 U.S. at 519, 33 L. Ed. 2d at 110-11, 92 S. Ct. at 2186. Society's

interests are not served, the *Barker* Court held, when delay in prosecution contributes to court backlog, allows defendants released on bail an opportunity to commit more crimes, prevents defendants from receiving rehabilitation, and lengthens pretrial detention, which causes overcrowding in jails and is costly. *Barker*, 407 U.S. at 520, 33 L. Ed. 2d at 111, 92 S. Ct. at 2187.

The speedy-trial right also differs from other rights because abridgment of the right to a speedy trial may, at times, work to the advantage of the accused and against the State. *Barker*, 407 U.S. at 521, 33 L. Ed. 2d at 111, 92 S. Ct. at 2187. Delay is often used as a defense tactic. For this reason, the *Barker* Court observed, "deprivation of the right to speedy trial does not *per se* prejudice the accused's ability to defend himself." *Barker*, 407 U.S. at 521, 33 L. Ed. 2d at 112, 92 S. Ct. at 2187.

Finally, the *Barker* Court noted that the right to a speedy trial is "a more vague concept than other procedural rules," which makes it "impossible to determine with precision when the right has been denied." *Barker*, 407 U.S. at 521, 33 L. Ed. 2d at 112, 92 S. Ct. at 2187. Instead, determining whether an accused's constitutional right to a speedy trial has been violated "necessitates a functional analysis of the right in the particular context of the case." *Barker*, 407 U.S. at 522, 33 L. Ed. 2d at 112, 92 S. Ct. at 2188. Because of the seriousness of the remedy—"a defendant who may be guilty of a serious crime will go free, without having been tried"—the right to a speedy trial should always be in balance, and not inconsistent, with the rights of public justice. *Barker*, 407 U.S. at 522, 33 L. Ed. 2d at 112, 92 S. Ct. at 2188.

The indistinct quality of the constitutional speedy-trial right has been recognized by this court. In *People v. Henry*, 47 Ill. 2d 312, 316 (1970), we held the constitutional right to a speedy trial "cannot be defined in terms

of an absolute or precise standard of time, within which an accused must be given trial." In *People v. Bazzell*, 68 Ill. 2d 177, 181 (1977), we announced that whenever a constitutional speedy-trial claim has been raised, "[t]he record in its totality must be examined to ascertain whether the defendant has enjoyed the right guaranteed by the constitution."

In an attempt to provide some structure for a court's inquiry into whether an individual has been deprived of his constitutional speedy-trial right, the *Barker* Court identified four factors that may be considered: the length of the delay; the reasons for the delay; the prejudice, if any, to the defendant; and defendant's assertion of his right. *Barker*, 407 U.S. at 530, 33 L. Ed. 2d at 116-17, 92 S. Ct. at 2192. Deciding whether a defendant's constitutional right to a speedy trial has been violated requires a balancing of these four factors. *Barker*, 407 U.S. at 530, 33 L. Ed. 2d at 116-17, 92 S. Ct. at 2192; *Bazzell*, 68 Ill. 2d at 182-83; *Henry*, 47 Ill. 2d at 316.

Because of the imprecise nature of the constitutional guarantee to a speedy trial, our legislature enacted section 103—5 of the Code of Criminal Procedure of 1963 (725 ILCS 5/103—5 (West 1998)). This statute specifies certain time periods within which a defendant must be brought to trial. The statute implements the constitutional guarantee, but is not equivalent to, or coextensive with, the constitutional right. *People v. Staten*, 159 Ill. 2d 419 (1994); *Bazzell*, 68 Ill. 2d at 181. When a defendant asserts a violation of his statutory right to a speedy trial, the statute " 'operates to prevent the constitutional claim from arising except in cases involving prolonged delay or novel issues.' " *People v. Anderson*, 53 Ill. 2d 437, 441 (1973), quoting *People v. Stuckey*, 34 Ill. 2d 521, 523 (1966).

In this appeal, the only issue presented to this court

is whether defendant's constitutional speedy-retrial right has been violated.[2]

### Standard of Review

As a preliminary matter, we address the dispute over the proper standard for review. We have held that "[w]hether an accused has been denied a speedy trial within the constitution is a judicial question," unrestricted by legislative time limitations. *Bazzell*, 68 Ill. 2d at 181. However, the degree of deference to be paid a lower court's determination on a defendant's constitutional speedy-trial claim has never been addressed by this court.

According to the State, a trial court faced with a constitutional speedy-trial claim exercises discretion when it balances the four *Barker* factors. For this reason, the State contends, a reviewing court should be limited to deciding whether the trial court abused its discretion. The State urges us to find that the appellate court erred when it reversed the trial court's ruling because, according to the State, the trial court did not abuse its discretion when it found that defendant's constitutional right had not been violated.

Defendant, however, contends a trial court's ruling

---

[2]In the appellate court, defendant also claimed a violation of his statutory speedy-trial right. Although the appellate court made no explicit finding with regard to the statutory claim, the appellate court implicitly found no statutory violation when it ruled that defendant shared responsibility for at least three months of the delay since the mandate was reissued. It is well settled that, when a defendant prevails in an Illinois court of review, a new statutory 120-day term will commence running when the mandate issues and is docketed in the trial court. *People v. Worley*, 45 Ill. 2d 96, 98 (1970). In this case the mandate issued on February 2, 1995, and defendant moved for dismissal almost six months later, on July 31, 1995. The appellate court's ruling that defendant shared responsibility for at least three months of this delay extinguished his statutory claim.

on a constitutional speedy-trial claim should be accorded no deference. Defendant asserts that a reviewing court should consider a constitutional speedy-trial claim *de novo* and engage in its own balancing of the *Barker* factors to decide whether a constitutional violation has been shown.

Neither the State, nor the defendant, provides citation to case law in support of their respective positions, and our own independent review of state and federal case law has revealed no definitive answer on this issue. For this reason, in resolving this issue, we look to general principles concerning standards of review.

In *People v. Coleman*, 183 Ill. 2d 366, 384-85 (1998), we were asked to determine the proper standard of review to be applied when a defendant appealed from a trial court's dismissal of a post-conviction petition when no evidentiary hearing had been held. We reviewed at length the various standards of review and found that "[t]he manifestly erroneous standard represents the typical appellate standard of review for findings of fact made by a trial judge." We further found that the abuse of discretion standard was " 'the most deferential standard of review available' " and should be reserved "for those decisions of the lower court which deserve great deference on review." *Coleman*, 183 Ill. 2d at 387, quoting M. Davis, *A Basic Guide to Standards of Judicial Review*, 33 S.D. L. Rev. 469, 480 (1988).

We determined that neither standard was proper when reviewing the summary dismissal of a post-conviction proceeding, since at this stage no factual issues had to be decided by the trial court. *Coleman*, 183 Ill. 2d at 388. A court of review would have the same ability as the trial court in the first instance to assess the allegations and, thus, there would be little justification for giving the trial court's conclusions deference. *Coleman*, 183 Ill. 2d at 388-89. Accordingly, we held "the

appropriate standard for this question is that of plenary review." *Coleman*, 183 Ill. 2d at 388-89.

Recently, in *In re G.O.*, 191 Ill. 2d 37 (2000), we determined the proper standard for reviewing a trial court's ruling that a defendant's statement was not voluntarily given and should be suppressed. Relying on the Supreme Court's pronouncement in *Ornelas v. United States*, 517 U.S. 690, 699, 134 L. Ed. 2d 911, 920, 116 S. Ct. 1657, 1663 (1996), we held:

"[I]n reviewing whether respondent's confession was voluntary, we will accord great deference to the trial court's factual findings, and we will reverse those findings only if they are against the manifest weight of the evidence. However, we will review *de novo* the ultimate question of whether the confession was voluntary." *In re G.O.*, 191 Ill. 2d at 50.

We derive from our decisions in *In re G.O.* and *Coleman* a basic principle. When a trial court rules on issues which present a mixed question of law and fact, the reviewing court must afford deference to a trial court's factual findings. A reviewing court, however, remains free to engage in its own assessment of the facts in relation to the issues presented and may draw its own conclusions when deciding what relief should be granted.

This is the appropriate standard to be applied here. When resolving a constitutional speedy-trial claim, any factual determinations made by the trial court, which are contained in the record, shall be upheld on review unless they are against the manifest weight of the evidence. This standard of review is already applied to factual determinations in statutory speedy-trial cases. See *People v. Kliner*, 185 Ill. 2d 81, 115 (1998) ("trial court's determination as to who is responsible for a delay of the trial is entitled to much deference, and should be sustained absent a clear showing that the trial court abused its discretion"); *People v. Turner*, 128 Ill. 2d 540 (1989). However, when a trial court performs the *Barker* balanc-

ing test and weighs the interests of the State against the interests of the defendant in light of the circumstances of the case, there is no need to afford deference to a trial court's determination. The trial court is in no better position than the reviewing court to balance the competing concerns. For this reason, we conclude that the ultimate determination of whether a defendant's constitutional speedy-trial right has been violated is subject to *de novo* review.

Having decided the proper standard of review, we now proceed to a consideration of defendant's constitutional speedy-trial claim. As noted earlier, this necessitates our balancing the factors set forth in *Barker*: the length of the delay; the reasons for the delay; the prejudice, if any, to the defendant; and defendant's assertion of his right. *Barker*, 407 U.S. at 530, 33 L. Ed. 2d at 116-17, 92 S. Ct. at 2192. All four factors are closely related and no one factor is necessary or sufficient to a finding that the right to a speedy trial has been violated. *Barker*, 407 U.S. at 530-33, 33 L. Ed. 2d at 116-19, 92 S. Ct. at 2192-93.

### The *Barker* Factors

When assessing a constitutional speedy-trial claim, the first consideration is the length of the delay. Since a certain amount of delay is "inevitable and wholly justifiable" (*Doggett v. United States*, 505 U.S. 647, 656, 120 L. Ed. 2d 520, 531, 112 S. Ct. 2686, 2693 (1992)), a speedy-trial inquiry will not be triggered unless the complained-of delay crosses the threshold from ordinary to " 'presumptively prejudicial.' " *Doggett*, 505 U.S. at 651-52, 120 L. Ed. 2d at 528, 112 S. Ct. at 2690-91, quoting *Barker*, 407 U.S. at 530-31, 33 L. Ed. 2d at 117, 92 S. Ct. at 2192; *People v. Singleton*, 278 Ill. App. 3d 296, 299 (1996); *People v. Belcher*, 186 Ill. App. 3d 202, 205-06 (1989).

In general, courts have recognized a delay approach-

ing one year to be "presumptively prejudicial." *Barker*, 407 U.S. at 530-31, 33 L. Ed. 2d at 117, 92 S. Ct. at 2192; *People v. Lock*, 266 Ill. App. 3d 185, 191 (1994). A finding of "presumptive prejudice," however, does not imply that the delay will be found to have actually prejudiced the defendant. Rather, "it simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry." *Doggett*, 505 U.S. at 652 n.1, 120 L. Ed. 2d at 528 n.1, 112 S. Ct. at 2691 n.1.

In this case, defendant moved for dismissal on speedy-trial grounds when he had not been retried after 26 months had elapsed since his convictions had been reversed. We find that this length of delay is sufficient to trigger a speedy-trial analysis.

Having decided that a speedy-trial inquiry has been triggered, we must next consider the reason for the delay. The State bears the burden of providing justification for any delay which has occurred. *People v. Singleton*, 278 Ill. App. 3d 296, 299 (1996); *People v. Belcher*, 186 Ill. App. 3d 202 (1989). Reasons which may be offered to explain a delay are assigned different weight. *Barker*, 407 U.S. at 531, 33 L. Ed. 2d at 117, 92 S. Ct. at 2192. For example, evidence that the State intentionally delayed prosecution to gain some tactical advantage will weigh very heavily against the State. *Barker*, 407 U.S. at 531, 33 L. Ed. 2d at 117, 92 S. Ct. at 2192. Other more neutral reasons, such as a crowded court docket (*People v. Wills*, 153 Ill. App. 3d 328 (1987)), faulty police procedure, negligence, or incompetence (*Singleton*, 278 Ill. App. 3d at 300; see *Doggett*, 505 U.S. at 652, 120 L. Ed. 2d at 528-29, 112 S. Ct. at 2691), though still charged against the State, will be weighed less heavily. *People v. Williams*, 299 Ill. App. 3d 143, 148 (1998). Other reasons for delay, such as the unavailability or inability to locate a competent witness (*People v. Sanders*, 86 Ill. App. 3d 457 (1980)), or a judge's illness (*People v. Dorsey*, 105 Ill.

App. 3d 895 (1982)), are generally held to be valid explanations, justifying a reasonable period of delay.

In the present case, different reasons were advanced for different portions of the 26-month period of delay. The 26-month delay was broken down into three segments: (1) a nine-month period between May 28, 1993, and February 28, 1994, during which the State sought review of the appellate court's reversal of defendant's convictions; (2) an 11-month period between February 28, 1994, and February 2, 1995, when no action was taken on the case because the appellate mandate was not reissued; and (3) a six-month period between February 2, 1995, when the mandate was issued, and July 31, 1995, when defendant moved for dismissal on speedy-trial grounds. We assess the reasons for these smaller periods of delay separately to determine whether they constitute justification for the delay.

### 1. *May 28, 1993, to February 28, 1994*

Following the reversal of defendant's convictions, the State appealed, first to this court and then to the United States Supreme Court. Nine months were consumed by these appellate proceedings. The appellate court, when ruling on defendant's speedy-trial claim, found this period of delay "fully justified." We agree.

In *United States v. Loud Hawk*, 474 U.S. 302, 312, 88 L. Ed. 2d 640, 652, 106 S. Ct. 648, 654 (1986), the United States Supreme Court considered, in a constitutional speedy-trial context, "how to weigh the delay occasioned by an interlocutory appeal when the defendant is subject to indictment or restraint." The *Loud Hawk* Court held:

"Given the important public interests in appellate review [citation] it hardly need be said that an interlocutory appeal by the Government ordinarily is a valid reason that justifies delay. In assessing the purpose and reasonableness of such an appeal, courts may consider several factors. These include the strength of the Government's position

on the appealed issue, the importance of the issue in the posture of the case, and—in some cases—the seriousness of the crime." *Loud Hawk*, 474 U.S. at 315, 88 L. Ed. 2d at 654, 106 S. Ct. at 656.

Although *Loud Hawk* discussed interlocutory appeals, the Court observed, generally:

"[T]here are important public interests in the process of appellate review. The assurance that motions to suppress evidence or to dismiss an indictment are correctly decided through orderly appellate review safeguards both the rights of defendants and the 'rights of public justice.' " *Loud Hawk*, 474 U.S. at 313, 88 L. Ed. 2d at 653, 106 S. Ct. at 655, quoting *Beavers v. Haubert*, 198 U.S. 77, 87, 49 L. Ed. 950, 954, 25 S. Ct. 573, 576 (1905).

We find the reasoning in *Loud Hawk* applicable here. Applying its rationale, we find the nine-month delay in the matter at bar was justified.

In this case, defendant's murder and arson convictions were reversed after the appellate court, contrary to the trial court, found the State failed to establish probable cause for defendant's arrest and suppressed defendant's confession. A confession is a vital piece of evidence and its suppression could compromise the State's prosecution. Consequently, it was reasonable for the State to seek review before proceeding to a new trial on this serious offense. Despite the State's lack of success, we do not find the appeal to have been frivolous or pursued in bad faith. Further, we do not find the nine-month delay to be unduly long. We conclude, therefore, that this period of delay was justified and should be given no effective weight towards defendant's speedy-trial claim.

As additional support for this determination, we note that, under Illinois law, the State has an absolute right to appeal "from an order or judgment the substantive effect of which results in *** quashing an arrest or search warrant; or suppressing evidence" and that "[t]he time during which an appeal by the State is pending is not counted for the purpose of determining whether an ac-

cused is entitled to discharge under section 103—5 of the Code of Criminal Procedure of 1963." 145 Ill. 2d Rs. 604(a)(1), (a)(4).

Although Rule 604(a) is not directly implicated in cases where, as here, defendant invokes his constitutional speedy-trial rights, the rule provides support for the notion that an appeal by the State is a valid reason which justifies delay. If the State reasonably exercises its right to pursue an appeal, it should not have to risk that the delay will be grounds for dismissal of the charges it seeks to enforce.

### 2. *February 28, 1994, to February 2, 1995*

When the United States Supreme Court denied the State's petition for *certiorari* on February 28, 1994, the appeal process was completed. The appellate court's mandate should have been reissued within a reasonable time. However, for no apparent reason, the mandate was not reissued until February 5, 1995—11 months later. The State claims the reason for this 11-month delay was "administrative error." Defendant does not dispute this explanation or contend that the delay was intentional.

There can be no doubt that the failure of the clerk's office to fulfill its duty to forward the mandate in a prompt and expeditious manner constitutes negligence, which is neither reasonable nor an acceptable cause for delay. Furthermore, since the State bears the burden of bringing a defendant to trial, this delay cannot be attributed to the defendant. *Barker*, 407 U.S. at 527, 33 L. Ed. 2d at 115, 92 S. Ct. at 2190. Consequently, as the Court proclaimed in *Doggett*, "[a]lthough negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." *Doggett*, 505 U.S. at 657, 120 L. Ed. 2d at 531-32, 112 S. Ct. at 2693.

We do not determine at this juncture, however, what weight should be given this period of unjustified delay. "[T]oleration of *** negligence varies inversely with its protractedness *** and its consequent threat to the fairness of the accused's trial." *Doggett*, 505 U.S. at 657, 120 L. Ed. 2d at 532, 112 S. Ct. at 2693. This period of delay must be viewed in conjunction with the other *Barker* factors before a determination can be made about its importance to the speedy-trial analysis.

### 3. *February 2, 1995, to July 31, 1995*

The last segment of delay consists of the six months between the time the mandate reissued and when defendant moved for dismissal. During this time both the State and the defendant were preparing for trial.

When the appellate court reviewed this period of delay it found, "The prosecution admits its responsibility for three months of the remaining six-month delay, but the prosecution provided an acceptable explanation for those three months. The defendant shares responsibility for about three months of the *** delay." 307 Ill. App. 3d at 819.

In his brief before this court, defendant accepts responsibility for the delay from March 15, 1995, until May 31, 1995. The defendant does not challenge the appellate court's ruling that the State adequately explained the remaining period of delay. Consequently, we accept the appellate court's finding that this period of delay was justified.

Having considered the reasons for the delay, we consider the third *Barker* factor—defendant's assertion of his right to a speedy trial. In the present case, defendant did not demand trial until May 1995—24 months after the reversal of his first conviction. He moved for dismissal of the indictment two months later.

Defendant has made no attempt to explain his apparent acquiescence to the State's inaction during the 24

months preceding his demand for trial. Instead, he contends only that his own inaction is not evidence that he knowingly and voluntarily relinquished his speedy-trial right and that waiver cannot be presumed from a silent record.

Defendant's argument is misplaced. Although it is true that courts may not presume a defendant's waiver of a fundamental right from his inaction, this does not mean a defendant will be completely absolved from all responsibility to assert his right to a speedy trial. See *Barker*, 407 U.S. at 525-30, 33 L. Ed. 2d at 114-16, 92 S. Ct. at 2189-92. Separate from any consideration of waiver, the *Barker* Court held that a defendant's conduct in asserting, or failing to assert, his rights was a factor to be weighed in the balancing test and that "failure to assert the right [would] make it difficult for a defendant to prove that he was denied a speedy trial." *Barker*, 407 U.S. at 532, 33 L. Ed. 2d at 118, 92 S. Ct. at 2193. Consequently, when assessing defendant's constitutional speedy-trial claim, his assertion of the right may be factored into the balancing test.

In the case at bar, defendant was aware of the charges of murder and arson which were pending against him. He had already been tried and found guilty on these charges and, although his convictions had been reversed, a new trial had been ordered. Furthermore, since defendant remained incarcerated following the reversal of his convictions, he had to be aware that the State intended to retry him on those charges. Yet, defendant never demanded trial until 24 months had passed.

The appellate court dismissed defendant's inaction, speculating that "until the trial court regained jurisdiction, with the issuance of the mandate, defendant may not have recognized any obvious forum in which he could assert his right to a speedy trial." However, defendant's delay may be attributable to other reasons. It is conceiv-

able that defendant's strategy was to forgo his right to a speedy trial in the hope that witnesses necessary to the prosecution would be lost and the State would choose not to retry him. Such was the case in *Jackson v. State*, 69 Md. App. 645, 519 A.2d 751 (1987).

We conclude, then, that defendant's failure to assert his right to a speedy trial should not be viewed as a completely neutral factor. Had defendant asserted his right during the 11 months his case was lost due to administrative error, the oversight would have been discovered and corrected. Defendant's failure to make any demand for trial in 24 months subsequent to the reversal of his convictions may be considered together with the totality of the circumstances when deciding whether a constitutional speedy-trial violation has been shown.

The fourth and final consideration is prejudice to the defendant. Prejudice "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect." *Barker*, 407 U.S. at 532, 33 L. Ed. 2d at 118, 92 S. Ct. at 2193. Those interests are: the prevention of oppressive pretrial incarceration, the minimization of defendant's anxiety and concern about the pending charge, and the limitation of the possibility that the defense will be impaired by the delay. *Barker*, 407 U.S. at 532, 33 L. Ed. 2d at 118, 92 S. Ct. at 2193; *People v. Moore*, 263 Ill. App. 3d 1 (1994).

In this case, defendant has produced no particularized evidence that his defense was impaired by the delay. Defendant, however, remained incarcerated through the 26-month period. The impairment of defendant's liberty is an element of prejudice which cannot be ignored. Detention prior to a proper adjudication is exactly the type of prejudice that the speedy-trial clause was intended to protect against. This prejudice weighs heavily against the State.

Applying the *Barker* Balancing Test

The four *Barker* factors, which we have reviewed above, "have no talismanic qualities." *Barker*, 407 U.S. at 533, 33 L. Ed. 2d at 118, 93 S. Ct. at 2193. They are merely the criteria which have been found relevant and useful to an evaluation of a defendant's constitutional speedy-trial claim. As observed earlier, the factors are interrelated and a constitutional speedy-trial violation will not be conditioned on the presence or absence of any single factor. *Barker*, 407 U.S. at 533, 33 L. Ed. 2d at 118, 92 S. Ct. at 2193. Once the factors have been considered, "courts must still engage in a difficult and sensitive balancing process." *Barker*, 407 U.S. at 533, 33 L. Ed. 2d at 118, 92 S. Ct. at 2193.

Our initial observation is that the posture of the case at bar differs from most cases that have come before the courts on constitutional speedy-trial claims. Generally, courts have been concerned with prolonged delays between indictment and trial or indictment and arrest. See *Barker*, 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182 (5 years between indictment and trial, 10 months of which defendant was incarcerated); *Doggett*, 505 U.S. 647, 120 L. Ed. 2d 520, 112 S. Ct. 647 (8½-year lag between indictment and arrest); *People v. Prince*, 242 Ill. App. 3d 1003 (1993) (12 years between indictment and trial); *People v. Williams*, 299 Ill. App. 3d 143 (1998) (six-year delay between indictment and arrest); *People v. Belcher*, 186 Ill. App. 3d 202 (1989) (29 months between indictment and arrest); *People v. Yaeger*, 84 Ill. App. 3d 415 (1980) (31-month delay between indictment and arrest). In several instances, the defendants were not even aware that charges had been brought against them.

In this case, however, defendant received a trial and was found guilty of murder and aggravated arson. On appeal from those convictions, the reviewing court found that the evidence of probable cause for defendant's arrest was lacking and, as a result, the fruit of that ar-

rest—defendant's confession—should not have been admitted into evidence at his trial. Defendant's convictions were reversed and a new trial was ordered. While awaiting retrial, defendant remained incarcerated. A period of 24 months passed before defendant demanded retrial and another two months passed before he objected to the delay and sought dismissal of the charges against him, claiming he had been denied his right to speedy retrial.

When the appellate court performed its balancing test, it gave no consideration to the fact that defendant failed to assert his right to a speedy retrial in the 26 months subsequent to the reversal of his convictions. Consequently, once the appellate court found that defendant had been incarcerated for an 11-month period of unjustified delay, it found "little to balance." This is where the appellate court erred.

Like the appellate court, we have analyzed the 26-month delay and found that more than half of this period of time—15 months—was justified and should not be used as the basis for finding a denial of defendant's speedy-trial rights. The remaining 11-month period of delay was not justified, but was due to administrative oversight. Because of the seriousness of the crime involved, we do not find an 11-month delay extraordinary. See *Barker*, 407 U.S. at 531, 33 L. Ed. 2d at 117, 92 S. Ct. at 2192 ("To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge").

We agree with the appellate court that defendant demonstrated prejudice because he remained incarcerated throughout the period of delay. This factor is a significant consideration in the speedy-trial analysis since "the Speedy Trial Clause's core concern is impairment of liberty." *Loud Hawk*, 474 U.S. at 312, 88 L. Ed. 2d at 652, 106 S. Ct. at 654. Nevertheless, unlike the appellate

court, we find the prejudice defendant suffered cannot be properly assessed unless we also consider defendant's failure to assert his speedy-trial right. Although defendant has no duty to bring himself to trial, we merely observe that an earlier assertion of his right could have corrected the error that occurred here and prevented some of the delay.

The circumstances of this case are unique. Upon the completion of appellate proceedings, the reviewing court clerk failed to reissue the mandate. Under the particular circumstances of this case, dismissal of the charges is too severe a remedy for the negligence which occurred, especially in light of the defendant's inaction and the seriousness of the offenses involved.

The balancing we are required to perform here is more than an abstract computation of individual factors. It must take into account the rights of the defendant, but does not preclude the rights of public justice. *Barker*, 407 U.S. at 522, 33 L. Ed. 2d at 112, 92 S. Ct. at 2188. In our view, when balancing the competing concerns in this case, the prejudice suffered by defendant due to his unjustified incarceration for an 11-month period does not warrant a finding that defendant's speedy-trial right was denied. The indictment against defendant should not have been dismissed.

## CONCLUSION

For the foregoing reasons, the judgment of the appellate court is reversed. However, because that court did not address certain alleged trial errors due to its reversal of defendant's conviction on speedy-trial grounds, we remand this cause to the appellate court for consideration of defendant's remaining arguments.

*Appellate court judgment reversed;*
*cause remanded.*