THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANTHONY GAY, Defendant-Appellant.

Fourth District   No. 4—07—0559

Opinion filed December 31, 2008.

Michael J. Pelletier, Gary R. Peterson, and Ryan R. Wilson, all of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Brown, State's Attorney, of Pontiac (Norbert J. Goetten, Robert J. Biderman, and Linda Susan McClain, all of State's Attorneys Appellate Prosecutor's Office, of counsel) for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In June 2006, a jury convicted defendant, Anthony Gay, of two counts of aggravated battery (720 ILCS 5/12—4(b)(6) (West 2000)). In March 2007, the trial court sentenced defendant to concurrent prison terms of eight years on each count, to be served consecutively to sentences he was serving in several unrelated cases.

Defendant appeals, arguing only that the State violated his constitutional right to a speedy trial under the sixth amendment to the United States Constitution (U.S. Const., amend. VI). We disagree and affirm.

## I. BACKGROUND

Because the parties are familiar with the extensive procedural history in this case, we discuss it only as necessary to place defendant's argument in context.

On February 2, 2004, the State charged defendant, who was then an inmate at Dixon Correctional Center, with three counts of aggravated battery (720 ILCS 5/12—4(b)(6) (West 2000)). Specifically, the State alleged that on February 11, 2001, defendant "knowingly made physical contact of an insulting or provoking nature" with Francis Drnjevic (count I), Dustin McQuire (count II), and Joni Harris (count III), in that defendant threw a semisolid substance upon them, knowing that they were correctional officers who were engaged in the execution of their official duties.

When defendant was charged in this case (Livingston County case No. 03—CF—24 (case 24)), he also had the following aggravated-battery cases pending in Livingston County: (1) case No. 03—CF—13 (case 13); (2) case No. 03—CF—59 (case 59); (3) case No. 03—CF—60 (case 60); (4) case No. 03—CF—61 (case 61); (5) case No. 03—CF—62 (case 62); (6) case No. 03—CF—146 (case 146); (7) case No. 03—CF—172 (case 172); (8) case No. 03—CF—269 (case 269); (9) case No. 03—CF—298 (case 298); (10) case No. 03—CF—299 (case 299); and (11) case No. 03—CF—318 (case 318).

On April 2, 2004, defendant *pro se* filed a demand for speedy trial in this case (case 24) pursuant to section 3—8—10 of the Unified Code of Corrections (730 ILCS 5/3—8—10 (West 2004)) and section 103—5 of the Code of Criminal Procedure of 1963 (Criminal Code) (725 ILCS 5/103—5(b) (West 2004)). Earlier, on July 1, 2003, defendant had filed a demand for speedy trial in case Nos. 59, 60, 61, 62, and 146. In addition, on March 3, 2004, defendant *pro se* filed a demand for a speedy trial in case Nos. 13, 146 (which he had previously listed in his July 2003 demand), 172, 269, 298, 299, and 318.

In May 2004, the trial court ordered a fitness examination pursuant to section 104—13 of the Criminal Code (725 ILCS 5/104—13 (West 2004)) based on its observation of defendant during an April 28, 2004, hearing. As a result of the court's order, defendant's pending cases were stayed. At that time, the status of defendant's 13 pending cases was as follows: (1) three cases pending sentencing (case Nos. 60, 61, and 62), (2) eight previously filed cases that had yet to be resolved (case Nos. 13, 59, 146, 172, 269, 298, 299, and 318), (3) a newly filed case (Livingston County case No. 03—CF—63 (case 63), and (4) this case (case 24).

On July 16, 2004, the State sent a letter to the trial court stating, in pertinent part, that efforts to comply with the court's fitness-examination order proved problematic because of defendant's repeated, self-inflicted injuries. On February 2, 2005, defendant's counsel filed a motion for psychiatric examination, which the court granted. Following a March 16, 2005, fitness hearing, the court found defendant fit to proceed and scheduled a June 8, 2005, joint sentencing and pretrial hearing on all 13 of defendant's pending cases. At that same hearing, defendant discharged his counsel and elected to proceed *pro se*.

On March 28, 2005, defendant *pro se* filed a motion for substitution of judge, which the trial court granted that same day. On April 7, 2005, defendant *pro se* filed a second motion for substitution of judge. Following a July 7, 2005, hearing, the court denied defendant's motion and rescheduled a hearing on defendant's pending cases for July 22, 2005.

A summary of the proceedings on defendant's pending cases showed the following: (1) on July 22, 2005, the trial court sentenced defendant in case Nos. 60, 61, and 62; (2) on August 31, 2005, a jury convicted defendant in case No. 172, and the court sentenced him on October 28, 2005; (3) on November 8, 2005, a jury convicted defendant in case No. 13, and the court sentenced him on December 14, 2005; (4) on November 15, 2005, a jury convicted defendant in case No. 269, and the court sentenced him on January 9, 2006; (5) on January 23, 2006, a jury convicted defendant in case No. 298, and the court sentenced him on February 28, 2006; (6) on January 25, 2006, a jury convicted defendant in case No. 299, and the court sentenced him on February 28, 2006; (7) on March 13, 2006, a jury convicted defendant in case No. 146, and the court sentenced him on March 16, 2006; and (8) on April 14, 2006, a jury convicted defendant in case No. 63, and the court sentenced him on August 15, 2006.

On June 5, 2006, defendant *pro se* filed a motion to dismiss the present case, arguing that because the State had not "tried [him] within the time prescribed by law," the trial court should dismiss the State's three-count information. Specifically, defendant contended that "[f]rom July 22, 2005[,] the State had six months to try [him] on the pending charge."

On July 12, 2006, the trial court entered a written order, stating in pertinent part as follows:

"The State[,] at all times after being requested or ordered by the court, has shown exemplary diligence in obtaining evidence material to the case requested by the defendant. The State has also shown an excellent degree of cooperation in the production of witnesses requested by the defendant."

Although the court's written order indicated that it was denying defendant's motion, it inadvertently omitted that last paragraph and, thus, did not explicitly provide a ruling on defendant's motion.

Following a June 2006 trial, a jury convicted defendant on counts I and II. In March 2007, the trial court sentenced defendant as previously stated.

In August 2006, defendant, who was then represented by appointed counsel, filed an amended motion for arrest of judgment and other posttrial relief, requesting, in pertinent part, that the trial court rule on his June 2006 motion to dismiss. At an October 2006 hearing, the court responded, in pertinent part, as follows:

"It is true that [defendant] has accumulated offenses at a rate that would exhaust our jury pool. He has continuously requested and has been granted special privileges in relation to trials in this county. We have not overlapped the jurors in any of the pools. We

have kept his jurors separate from the other jurors so that we could try as many cases as possible on the calendar. When we have attempted to try three cases on the two-week calendar, we've received objections from [defendant] or we've simply exhausted our jury pool, unique circumstances in Illinois, unique circumstances in Livingston County, but circumstances that we've had to deal with nonetheless.

So, I would indicate, as I have before, that the motion to dismiss based on speedy-trial grounds is denied."

This appeal followed.

## II. DEFENDANT'S CLAIM THAT THE STATE VIOLATED HIS CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL

Defendant argues that the State violated his constitutional right to a speedy trial under the sixth amendment to the United States Constitution (U.S. Const., amend. VI). We disagree.

The sixth-amendment right to a speedy trial is fundamental and is made applicable to state proceedings via the due-process clause of the fourteenth amendment. *In re Detention of Hughes*, 346 Ill. App. 3d 637, 649, 805 N.E.2d 725, 734 (2004). However, "the nature of the speedy-trial right [is] 'generically different' from other constitutionally guaranteed protections." *People v. Crane*, 195 Ill. 2d 42, 46, 743 N.E.2d 555, 559 (2001), quoting *Barker v. Wingo*, 407 U.S. 514, 519, 33 L. Ed. 2d 101, 110, 92 S. Ct. 2182, 2186 (1972). Specifically, "the right to a speedy trial is 'a more vague concept than other procedural rules,' which makes it 'impossible to determine with precision when the right has been denied.' " *Crane*, 195 Ill. 2d at 47, 743 N.E.2d at 560, quoting *Barker*, 407 U.S. at 521, 33 L. Ed. 2d at 112, 92 S. Ct. at 2187.

Our supreme court has recognized the indistinct quality of this right by holding that "the constitutional right to a speedy trial 'cannot be defined in terms of an absolute or precise standard of time, within which an accused must be given [a] trial.' " *Crane*, 195 Ill. 2d at 47-48, 743 N.E.2d at 560, quoting *People v. Henry*, 47 Ill. 2d 312, 316, 265 N.E.2d 876, 879 (1970). "[W]henever a constitutional speedy-trial claim has been raised, '[t]he record in its totality must be examined to ascertain whether the defendant has enjoyed the right guaranteed by the constitution.' " *Crane*, 195 Ill. 2d at 48, 743 N.E.2d at 560, quoting *People v. Bazzell*, 68 Ill. 2d 177, 181, 369 N.E.2d 48, 49 (1977). "[T]he ultimate determination of whether a defendant's constitutional speedy-trial right has been violated is subject to *de novo* review." *Crane*, 195 Ill. 2d at 52, 743 N.E.2d at 563.

■ Defendant urges this court to employ the *Barker* balancing analysis to determine whether the State violated his constitutional right to a speedy trial. See *Barker*, 407 U.S. at 530, 33 L. Ed. 2d at

116-17, 92 S. Ct. at 2192 (some factors courts should consider in speedy-trial claims include (1) the length and (2) reason for the delay and (3) whether defendant (a) asserted his right and (b) was prejudiced by the delay). However, given (1) the unusually large number of cases involving defendant pending before the trial court, (2) the extensive and complicated nature of the procedural history regarding defendant's cases, (3) the State's and the court's administrative and logistical constraints, (4) defendant's valid concerns regarding the county's limited jury pools, and (5) the limited number of cases that could be heard during the court's monthly trial calendar, a normal *Barker* analysis is neither applicable nor appropriate.

■ Our review of the record reveals that (1) at the time the State charged defendant in this case, he had (a) 11 other cases pending before the trial court and (b) filed two separate statutory demands for speedy trials encompassing all 11 pending cases; (2) after the court determined defendant was fit to stand trial and disposed of his two motions for substitution of judge, the court granted defendant's request to schedule his pending cases—which by this time totaled 13—so as not to contaminate the jury pools and, thus, eliminate possible prejudice to defendant; and (3) the State efficiently pursued and the court methodically adjudicated at least 11 of defendant's 13 total cases (the record does not show the status of case Nos. 59 and 318) within an 11-month period (July 22, 2005, through June 12, 2006).

The record in this case belies defendant's assertion that the delay was "due to the State's failure to advance [his] case for trial." We agree with the trial court that under the unique circumstances surrounding this case, the State efficiently and diligently handled defendant's cases and addressed his numerous requests, despite the administrative and logistical constraints imposed on both the State and the court. Although the delay in adjudicating defendant's case was unfortunate, it (1) was not contrived to hamper defendant's defense, (2) was due, at least in part, to defendant's own conduct, (3) did not prejudice defendant, and (4) was not unreasonable under the circumstances. Thus, we reject defendant's argument that the State violated his constitutional right to a speedy trial.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we award the State its $50 statutory assessment against defendant as costs of this appeal.

Affirmed.

MYERSCOUGH and TURNER, JJ., concur.