THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RAPHAEL CLARK, Defendant-Appellant.

Fifth District   No. 5—87—0453

Opinion filed August 24, 1989.

Daniel M. Kirwan and E. Joyce Randolph, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

John Baricevic, State's Attorney, of Belleville (Kenneth R. Boyle, Stephen E. Norris, and Debra A. Buchman, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOWERTON delivered the opinion of the court:

Defendant kidnapped Gary Decker and his wife, Donna, on a St. Louis parking lot, robbed and murdered Gary Decker in Missouri, and raped and murdered Donna Decker in St. Clair County, Illinois.

Defendant was arrested on March 2, 1983, by United States Mar-

shalls who jailed him in the St. Clair County jail, a federally approved jail, as a prisoner of the United States. He remained there as a prisoner of the United States until sent to the United States penitentiary at Leavenworth, Kansas, on June 23, 1983, for 120 years.

While in the St. Clair County jail, on June 2, 1983, defendant was indicted in St. Clair County, Illinois, for the rape and murder of Donna Decker. On June 17, 1983, he was arraigned in St. Clair County, pled not guilty, and was appointed a public defender.

Missouri filed a detainer against defendant for Gary Decker's murder after defendant had been sent to Leavenworth. Defendant was tried, convicted and, on April 6, 1984, sentenced to the Missouri penitentiary for his natural life without parole for 50 years and returned to the custody of the Attorney General of the United States to first satisfy the 120-year sentence of the United States of America.

On January 8, 1985, Illinois dismissed the charges against defendant, refiled them on September 24, 1986, and on January 24, 1987, for the first time, served an arrest warrant on defendant. Defendant immediately was brought to Illinois. On June 8, 1987, after a stipulated bench trial, defendant was found guilty of murder and rape. He was sentenced to 50-year concurrent terms on each offense, with both sentences consecutive to the sentences imposed by the United States and Missouri.

Not once did defendant demand trial or prosecution under the interstate agreement on detainer act (Ill. Rev. Stat. 1987, ch. 38, par. 1003—8—9 *et seq.*).

Now he claims: (1) Illinois deprived him of his statutory right to be tried within 120 days (Ill. Rev. Stat. 1987, ch. 38, par. 103—5); (2) Illinois deprived him of his right to a speedy trial, as guaranteed by the sixth amendment to the Constitution of the United States, made applicable to Illinois by the due process clause of the fourteenth amendment to the Constitution of the United States; and (3) that he inappropriately was sentenced to an extended term of 50 years for rape, even though he agreed to the sentence.

■ Taking the third contention first, the State agrees that 50 years is an unauthorized, extended sentence for rape; murder was the most serious offense with which he was charged and and an extended term can be entered only on the most serious charge. (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—2(a); *People v. Jordan* (1984), 103 Ill. 2d 192, 469 N.E.2d 569.) The State further agrees that a court cannot impose a sentence for a term longer than that allowed by the legislature, even though defendant bargains for a longer sentence. (*People v. Majer* (1985), 131 Ill. App. 3d 80, 475 N.E.2d 269.) Accordingly, we

are compelled to give defendant a reduction of his sentence. Defendant's sentence for rape is hereby reduced to 30 years, but otherwise is unchanged.

■ Contrary to defendant's complaint, Illinois did not deprive him of his statutory right to a speedy trial as provided by section 103—5(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 103—5(a)).

Defendant relies on *People v. Fosdick* (1967), 36 Ill. 2d 524, 224 N.E.2d 242, to support his position that he was not placed on trial within 120 days, and therefore, the charges against him must be dismissed. *Fosdick* does not control this case.

In *Fosdick*, Champaign County dismissed its charges, voluntarily relinquished custody to another county, and then refiled charges. These facts led the *Fosdick* court to find an attempt to evade the 120-day rule. (See *People v. Davis* (1983), 97 Ill. 2d 1, 452 N.E.2d 525.) Defendant, here, attempts to bring himself within *Fosdick*'s sphere by arguing that the custody of the United States and the custody of St. Clair County were simultaneous from March 2, 1983, the date he was arrested.

Defendant does not succeed. The custody was not simultaneous. Defendant merely was physically present in St. Clair County from March 2 until June 23, 1983. He was there as a prisoner of the United States, not as a prisoner of St. Clair County. He was in the St. Clair County jail only because it was an approved, designated jail of the United States. The power and authority of the United States, not the power and authority of St. Clair County, had put him there. His presence in the St. Clair County jail, insofar as it relates to custody, was accidental. He was in the custody of the United States, not St. Clair County.

*Fosdick* is distinguishable further. In *Fosdick*, defendant was being prosecuted only by one government, the people of the State of Illinois, although venue was being laid in two separate counties for two separate crimes. In this case, however, defendant was being prosecuted by three different governments, the United States, Missouri, and Illinois. Therefore, there is every reason not to apply *Fosdick*, which should be limited to its facts.

Finally, *Fosdick* does not control, because there the voluntary relinquishment of custody operated in tandem with dismissal and reinstatement of charges to establish an attempt to evade the provisions of the 120-day rule. The case at bar contrasts starkly. In this case, there was no voluntary relinquishment of custody, because custody was in the United States, not St. Clair County. St. Clair County could

not relinquish what it never had. Therefore, the dismissal and reinstatement here operate alone, not in tandem with relinquishment of custody. The mere dismissal and refiling here do not imply any attempt to evade the 120-day rule.

Illinois did not have custody until January 24, 1987, and defendant's trial, therefore, was held within 120 days as prescribed by statute. Ill. Rev. Stat. 1987, ch. 38, par. 103—5(a).

■■ ■ Defendant next contends that he was deprived of his right to a speedy trial as guaranteed by the sixth amendment to the United States Constitution. He is wrong. Illinois did not deprive defendant of his right to a speedy trial as guaranteed by the sixth amendment to the United States Constitution.

A sixth amendment right to a speedy trial was made applicable to the States by the due process clause of the fourteenth amendment in *Klopfer v. North Carolina* (1967), 386 U.S. 213, 18 L. Ed. 2d 1, 87 S. Ct. 988. Whereas a claimed violation of Illinois' 120-day rule calls for counting days in custody, analysis of whether a constitutional right to speedy trial has been abridged calls for a "functional analysis *** in the particular context of the case." (*Barker v. Wingo* (1972), 407 U.S. 514, 522, 33 L. Ed. 2d 101, 112, 92 S. Ct. 2182, 2188.) Cases necessarily are approached on an *ad hoc* basis. Four factors are assessed and balanced in each case to determine if defendant has been deprived of his constitutional right to a speedy trial. These factors are: length of delay, reason for delay, defendant's assertion of the right to a speedy trial, and prejudice to defendant.

In this case, the length of delay was only three months if calculated from the time defendant came into Illinois custody. Viewed most favorably to defendant, it was four years, three months.

The reason for delay seems relatively clear. Defendant first was in custody of the United States, then Missouri, and finally Illinois. We do not find from this any deliberate attempt to delay the trial in order to hamper the defense. We find only an attempt to prosecute defendant. Rather than finding an attempt to gain an advantage, we believe the reasons for the delay are neutral.

■ Next we assess defendant's assertion of his right to a speedy trial: He never did. Defendant never once asserted his right, until immediately before trial. Not once did he ask Illinois to take him into custody. Not once did he demand trial. Not once did he request trial. Defendant has some responsibility to assert a speedy trial claim. (*Barker v. Wingo* (1972), 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182.) In fact, "barring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional

right on a record that strongly indicates \*\*\* that the defendant did not want a speedy trial." (*Barker v. Wingo*, 407 U.S. at 536, 33 L. Ed. 2d at 120, 92 S. Ct. at 2195.) This record does not show defendant wanting a speedy trial.

■■ Finally, we probe for prejudice to defendant. Prejudice is "assessed in the light of the interests which the right to speedy trial was designed to protect." There are three such interests: (1) prevention of oppressive pretrial incarceration; (2) minimization of anxiety and concern about the pending charge; and (3) limiting the possibility that the defense will be impaired by delay. We consider each of these three interests.

Oppression? Oppression is subjecting another to cruel and unjust hardship. (*Black's Law Dictionary* 1244 (4th ed. 1951).) Almost all of defendant's pretrial incarceration was because he was under sentences from two other jurisdictions as a result of his murderous spree. No facts are presented from which we could find an unjust use of the power of the State. We further fail to see oppression in a four-year delay which involves three separate jurisdictions.

Anxiety? How could defendant have been anxious and concerned about this case in Illinois when he was in the custody of the Attorney General of the United States for 120 years, and after doing that time, then was to be in custody of Missouri penitentiary for his natural life, without parole for 50 years? The only conceivable catalyst of anxiety would be the death penalty. Although we note that death could strike even this defendant's heart with dread, under these circumstances, we do not feel this fact is significant, that *by itself*, it would create prejudice.

Impairment of defense? Lastly, there is no showing that the defense was impaired by the delay. On the other hand, the prosecution was: One of its witnesses against defendant died during the delay.

We find that a delay of four years, explained, neutral, not deliberately contrived to hamper the defense, during which defendant never requested trial, and causing no demonstrable prejudice, did not deprive defendant of his right to a speedy trial as guaranteed by the sixth amendment to the Constitution of the United States.

The judgment and sentence of the circuit court is affirmed, but remanded to the circuit court for entry of a modified sentence and mittimus.

Affirmed as modified and remanded.

GOLDENHERSH and RARICK, JJ., concur.