THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. REGINALD WELCH, a/k/a Reginal Welch, Defendant-Appellant.

Fifth District   No. 5—03—0681

Opinion filed December 16, 2005.

Daniel M. Kirwan and Larry R. Wells, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

William A. Mudge, State's Attorney, of Edwardsville (Norbert J. Goetten, Stephen E. Norris, and Patrick D. Daly, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE SPOMER delivered the opinion of the court:

The defendant appeals his August 6, 2003, conviction for armed robbery (720 ILCS 5/18—2(a) (West 2000)) and aggravated robbery (720 ILCS 5/18—5(a) (West 2000)). The proceedings took place in the circuit court of Madison County. Following a trial and a finding of guilty by a jury on both counts, the judge merged the convictions into one conviction for armed robbery (720 ILCS 5/18—2(a) (West 2000)). At the sentencing hearing on October 30, 2003, the defendant was sentenced to 10 years in the Illinois Department of Corrections. The defendant raises the following claims of error on appeal: (1) the conviction was in violation of the defendant's right to a speedy trial as codified by section 103—5(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/103—5(a) (West 2000)), and trial counsel was ineffective for failing to raise the issue, (2) the defendant's motion to suppress his confession should have been granted, (3) the defendant was denied a fair trial by the misconduct of the prosecutor, and trial counsel was ineffective for his failure to object, and (4) trial counsel was ineffective for his failure to prepare for the trial, causing trial counsel to rely on an unsupportable assertion in his opening statement and closing argument. For the reasons set forth below, we affirm the defendant's conviction.

The facts necessary for our analysis of the speedy trial issue are as follows. On June 20, 2001, a warrant of arrest was issued for the defendant in Madison County for the offense of armed robbery (720 ILCS 5/18—2(a) (West 2000)). On June 27, 2001, the defendant was arrested by United States marshals in St. Clair County on the Madison County warrant. For reasons that are unclear from the record, the United States marshals delivered the defendant to the St. Clair County jail. While at the St. Clair County jail, the defendant was questioned by St. Clair County officials in connection with a separate armed robbery that had occurred in St. Clair County. On June 28, 2001, the defendant confessed to the St. Clair County armed robbery, and on

June 29, 2001, St. Clair County filed a criminal complaint and issued a warrant of arrest for the defendant, setting bail in the amount of $150,000. The defendant was brought before a St. Clair County judge and arraigned on the St. Clair County armed robbery charge on July 2, 2001. The defendant was unable to make bail and remained in the St. Clair County jail until the disposition of the St. Clair County charge. The record of the St. Clair County proceedings is a part of the record for this appeal.

The defendant filed a motion to suppress his confession to the St. Clair County charge on October 8, 2001. After a hearing held on November 15, 2001, the defendant's motion to suppress his confession to the St. Clair County charge was granted. At a December 10, 2001, pretrial conference, the St. Clair County prosecutor announced that the prosecution planned to file an interlocutory appeal on the suppression issue. The order of the St. Clair County judge entered that date states: "On motion of the defendant, the defendant's bond is reduced to a $50,000 recognizance bond. Defendant remanded to the custody of Madison County pursuant to hold."[1] On December 11, 2001, the day after the defendant was remanded to the custody of Madison County pursuant to the St. Clair County order, the defendant was first transported to Madison County for his arraignment.

The defendant argues that he was denied his right to a speedy trial because he was arrested on the Madison County warrant on June 27, 2001, and was not arraigned on the charge until December 11, 2001, a period of 167 days. The defendant contends that pursuant to the speedy trial statute (725 ILCS 5/103—5(a) (West 2000)), he was entitled to a trial on the Madison County charge within 120 days of his arrest. Section 103—5(a) of the Code of Criminal Procedure of 1963 provides, in relevant part, "Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant ***." 725 ILCS 5/103—5(a) (West 2000).

The defendant argues that, according to *People v. Clark*, 188 Ill. App. 3d 130 (1989), because the defendant was originally arrested on the Madison County warrant, Madison County is the only authority that held him and his 120 days ran the entire time St. Clair County

---

[1] On September 3, 2003, this court affirmed the ruling of the St. Clair County judge on the suppression issue. *People v. Welch*, No. 5—01—0994 (2003) (unpublished order under Supreme Court Rule 23 (166 Ill. 2d R. 23)). Following the issuance of this court's order, the prosecutor moved for a dismissal of the St. Clair County charge. The order of the dismissal of the St. Clair County charge was entered on November 21, 2003.

was holding him on St. Clair County charges. The State argues that the defendant was in the custody of St. Clair County from the time that St. Clair County filed charges against the defendant. The State points to *People v. Davis*, 97 Ill. 2d 1 (1983), as authority for its position that the defendant was not in Madison County custody for speedy trial purposes during the time that St. Clair County was prosecuting its charges against the defendant.

In *Davis*, the defendant was in custody in the St. Clair County jail awaiting a trial and sentencing on pending St. Clair County charges. *Davis*, 97 Ill. 2d at 10-11. During that time, pursuant to a writ of *habeas corpus ad prosequendum*, the sheriff of St. Clair County brought the defendant to Madison County, where he was served with a warrant and arraigned on a different offense. *Davis*, 97 Ill. 2d at 11. Following the arraignment, a preliminary hearing, and the appointment of counsel, the defendant was returned to St. Clair County for the disposition of the St. Clair County charges. *Davis*, 97 Ill. 2d at 11. After the defendant was sentenced and imprisoned on the St. Clair County charges, Madison County issued a second writ of *habeas corpus ad prosequendum*, commanding the correctional institution to bring the defendant to Madison County for his trial. *Davis*, 97 Ill. 2d at 11. The defendant challenged the Madison County conviction on speedy trial grounds.

The Illinois Supreme Court in *Davis* held that although "[t]here is no question that the 120-day period prescribed in section 103—5(a) commences to run on the date defendant is taken 'in custody' for the offense for which discharge is sought," where a defendant is in custody awaiting trial in one county and there is a charge pending against him in another county, he cannot be deemed to be in custody for purposes of the latter offense until such time as the proceedings against him in the first county are terminated and he is then *returned to, or held in custody for, the second county. Davis*, 97 Ill. 2d at 11, 13. The Illinois Supreme Court recognized that this is the rule even where the defendant has appeared before the court in the second county but is subsequently returned to the first county for further proceedings. *Davis*, 97 Ill. 2d at 13.

■ The defendant attempts to distinguish *Davis* by focusing on the fact that the defendant in the instant case was originally arrested and held on the Madison County warrant and should therefore be deemed in Madison County custody for the entire period he was in St. Clair County custody. We find this distinction unpersuasive. Once St. Clair County filed charges and arraigned the defendant, St. Clair County exercised its right to hold the defendant until he posted bail or until a disposition of the St. Clair County charges. Unlike the situation in

*Clark*, where the federal government was holding the defendant on a federal charge, the defendant in this case was being held by the State of Illinois on charges in two different venues. We hold that the speedy trial period was tolled from the time St. Clair County filed its charges and arraigned the defendant until the St. Clair County charges were disposed of and the defendant was released to Madison County pursuant to its hold. Our holding comports with the reasoning of the Illinois Supreme Court in *Davis*, wherein the court explained:

> " 'Any other construction would embarrass and harass the effective administration of criminal justice and would tend to favor an accused who is in custody of one county for a crime[ ] but has formal charges pending against him, for which hold or detainer orders have been placed in several counties. Such an absurd result could not have been intended by the legislature when section 103–5(a) was enacted. Further, it would seem that if one county is to be allowed 120 days in which to prosecute an accused who is in custody for an alleged offense, another county should have an equal amount of time, notwithstanding that its charge against the same accused has been concurrently pending while the case in the first county was being disposed of.' " *Davis*, 97 Ill. 2d at 13, quoting *People v. Clark*, 104 Ill. App. 2d 12, 20 (1968).

Applying our holding to the facts, the defendant is deemed to be in the custody of Madison County from June 27, 2001, when he was arrested on the Madison County warrant, until June 29, 2001, when St. Clair County filed its charges against the defendant, a period of two days. The speedy trial period for Madison County was then tolled from June 29, 2001, until December 10, 2001, the date when St. Clair County reduced the defendant's bond to a recognizance bond and released the defendant to Madison County pursuant to its hold on the defendant. From December 11, 2001, until the first trial setting in Madison County on February 4, 2002, a period of 57 days, the defendant was in Madison County custody for purposes of the speedy trial period. The record shows that any delay caused by the several continuances following the original trial setting of February 4, 2002, was attributed to the defendant, and the defendant does not argue otherwise on appeal. Accordingly, for speedy trial purposes, the defendant was brought to trial 59 days after he was in the custody of Madison County, and there was no violation of the defendant's rights to a speedy trial.

■ The defendant also argues that trial counsel was ineffective for failing to raise the speedy trial issue during the original proceedings. In order to obtain a reversal on the basis of ineffective assistance of counsel, a convicted defendant must show that counsel's performance

fell below an objective standard of reasonableness and that counsel's errors were so serious that they deprived the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984). Because there was no speedy trial violation, the defendant's claim of ineffective assistance of trial counsel for trial counsel's failure to object on speedy trial grounds must fail on both prongs of the *Strickland* test. *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984).

We now turn to the issue of the defendant's confession. The following evidence was adduced at the suppression hearing. Madison County officials first interviewed the defendant in reference to the Madison County armed robbery on June 19, 2001. At that time, the officials confronted the defendant with the fact that an eyewitness had taken down the license plate number of the vehicle used in the robbery and that the vehicle had been traced as a rental car rented by the defendant. At that time, the defendant told officials that he had let a friend borrow the car and that his children had found a wig and a BB gun on the back floorboard when the car was returned. Following the June 19 interview, the defendant contacted Madison County officials on June 20, 2001, and indicated he no longer wished to speak to detectives on the advice of counsel he had retained in connection with a personal injury lawsuit. However, the defendant called one of the Madison County detectives a second time on June 20, 2001, and indicated that he wanted to continue to cooperate.

Following the defendant's arrest in St. Clair County on the Madison County warrant, St. Clair County officials contacted Madison County officials and informed them that the defendant had confessed to the St. Clair County robbery. The defendant was again interrogated concerning the Madison County charge by a Madison County detective on July 6, 2001, while the defendant was incarcerated at the St. Clair County jail. We note that at the time of the interrogation by Madison County, the defendant was in the custody of St. Clair County on the charges filed in that county on June 29, 2001. The detective produced a *Miranda* waiver form (*Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966)) and began explaining the form to the defendant. The defendant said he would not sign the form, indicating he had attempted suicide a few days earlier and did not think anything he would write down would mean much. The detective read the *Miranda* rights to the defendant out loud, and the defendant verbally indicated he understood his rights. The defendant then verbally consented to questioning.

During questioning, the defendant denied any responsibility for the Madison County armed robbery. The detective then indicated he

was going to leave because he had come to get the truth and did not believe the defendant was telling the truth. The detective stood up and knocked on the window of the interrogation room to get a guard's attention to be let out of the room and terminate the interview. The defendant began pleading with the detective to stay and announced to the detective, "I did it." The defendant indicated he had argued with his wife earlier that day and committed the robbery thereafter. The defendant indicated that he had used a BB gun and did not intend to hurt anyone.

The defendant makes two arguments on appeal in support of his contention that the motion to suppress should have been granted. First, the defendant argues that the State violated his rights by delaying his probable cause hearing in order to interrogate him for the purpose of gathering additional evidence. The defendant argues that under United States Supreme Court precedent, it is *per se* illegitimate to delay a probable cause hearing for this purpose. *County of Riverside v. McLaughlin*, 500 U.S. 44, 114 L. Ed. 2d 49, 111 S. Ct. 1661 (1991). *McLaughlin* concerned defendants arrested without a warrant and the unreasonable delay of a probable cause determination. *McLaughlin*, 500 U.S. at 52, 114 L. Ed. 2d at 60, 111 S. Ct. at 1667-68. The defendant in this case was arrested pursuant to a warrant. The defendant's argument and citation to *McLaughlin* are misplaced under the facts of this case and provide no authority for the suppression of the defendant's confession.

■ By statute, a defendant arrested in a county in Illinois other than the one in which a warrant for his arrest was issued "shall be taken without unnecessary delay before the nearest and most accessible judge in the county where the arrest was made or, if no additional delay is created, before the nearest and most accessible judge in the county from which the warrant was issued." 725 ILCS 5/109—2(a) (West 2000). We note that there does not seem to be unreasonable delay in this case because, as outlined below, approximately 48 hours after the defendant's arrest on the Madison County warrant, St. Clair County filed charges and arraigned the defendant. At that point, the defendant was deemed to be in the physical custody of St. Clair County. This determination aside, the Illinois Supreme Court has held that even if a delay between a warrantless arrest and a probable cause determination is unreasonable, a statement or confession obtained during that period is not necessarily suppressed. *People v. Willis*, 215 Ill. 2d 517, 532 (2005). Such statements will only be suppressed if they are involuntary. *Willis*, 215 Ill. 2d at 535.

■ To determine whether the defendant's confession was voluntary, we consider the totality of the circumstances surrounding it, including

the defendant's age, intelligence, education, experience, and physical condition at the time of the detention and interrogation; the duration of the interrogation; the presence of *Miranda* warnings; the presence of any physical or mental abuse; and the legality and duration of the detention. *Willis*, 215 Ill. 2d at 536. We will not disturb the circuit court's decision on this issue unless it was against the manifest weight of the evidence. *Willis*, 215 Ill. 2d at 536. However, when neither the trial court's findings of fact nor its determination of witness credibility is questioned, a ruling on a motion to suppress is reviewed *de novo. People v. Mendez*, 322 Ill. App. 3d 103, 109 (2001).

■ The record contains ample evidence that the defendant was an articulate and intelligent adult, including having a college-level education and prior dealings with law enforcement that evidenced an understanding of the *Miranda* warnings. The defendant indicated to the officers on the day of the confession sought to be suppressed that he understood his *Miranda* rights. Although the defendant refused to sign the *Miranda* waiver form, the defendant indicated to the officer that he would talk to him. The interrogation lasted no more than several minutes. There is no evidence of physical or mental abuse in the record. The record shows that the officer was trying to end the interrogation when the defendant gave his confession. Applying these facts, the trial court's determination that the defendant's confession was voluntary cannot be said to be against the manifest weight of the evidence.

The defendant's second argument in support of his contention that the motion to suppress should have been granted is that the defendant had invoked his right to silence and/or his right to counsel prior to his arrest and that the officers later improperly renewed their interrogation of the defendant while he was in custody at the St. Clair County jail. The defendant's basis for this argument is that he indicated to the officers on June 20 that his personal injury counsel had advised him not to talk to the officers about the offense. The defendant argues that the officers' subsequent interrogation of him on July 6 was improper and should have resulted in a suppression.

■ The circuit court found that the events on June 20 indicated an intent on the part of the defendant to invoke his right to silence, rather than his right to counsel. This finding is supported by the record because there is no evidence that the defendant ever requested an attorney prior to the questioning. Following the Illinois Supreme Court's analysis in *People v. Nielson*, 187 Ill. 2d 271 (1999), the circuit court determined that the defendant's initial desire to cut off the questioning was "scrupulously honored" and that the standards for resumed questioning had been met. The factors for determining

whether the defendant's desire to cut off questioning was "scrupulously honored" are whether (1) the police immediately halted the initial interrogation after the defendant invoked his right to remain silent, (2) a significant amount of time elapsed between the interrogations, (3) a fresh set of *Miranda* warnings was given prior to the second interrogation, and (4) the second interrogation addressed a crime that was not the subject of the first interrogation. *Nielson,* 187 Ill. 2d at 287, citing *Michigan v. Mosley,* 423 U.S. 96, 104-05, 46 L. Ed. 2d 313, 321-22, 96 S. Ct. 321, 327 (1975).

■ Applying these factors to the subsequent interrogation of the defendant at the St. Clair County jail on July 6, 2001, 16 days had passed since the defendant had indicated he no longer wished to talk to police, and the investigators made no attempt to resume the questioning of the defendant until 16 days had passed. We conclude that this was a significant amount of time between the interrogations. See *People v. Mendez,* 322 Ill. App. 3d 103, 114 (2001) (two hours was a sufficient amount of time between interrogations). The investigator read a fresh set of *Miranda* warnings prior to the second interrogation. Although the second interrogation addressed the same crime as the first interrogation, this factor alone does not preclude a finding that the defendant's right to remain silent was "scrupulously honored" when all the other factors are met. *Nielson,* 187 Ill. 2d at 290. Accordingly, we cannot conclude that the trial court's determination on this issue was against the manifest weight of the evidence, and we make the same determination from the record applying the *de novo* standard of review.

■ The defendant's third claim of error is that the defendant was denied a fair trial by the cumulative effect of misconduct on the part of the prosecutor and that trial counsel was ineffective for his failure to object to the alleged prosecutorial misconduct. Specifically, the defendant cites the following comments by the prosecutor during his opening statement and/or closing argument: (1) that the defendant "used his own inclinations" to rob the Raceway because he was "having a bad day," (2) that the defendant "plea bargained" for a better deal by confessing, (3) that if the evidence against the defendant was not considered sufficient to warrant a guilty verdict, "I don't know what kind of case we could ever bring in front of a jury," and (4) that "the shoe does fit and so you cannot acquit."

Because there was no objection to any of the allegedly improper comments during the trial, we address each of the defendant's allegations using the plain error standard set forth in Illinois Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)). In a criminal case, the plain error doctrine may be invoked in two instances: first, where the

evidence in the case is closely balanced and, second, where to leave the error or errors uncorrected raises a substantial risk that an accused was denied a fair trial and remedying the error or errors is necessary to preserve the integrity of the judicial process. *People v. Shaw*, 186 Ill. 2d 301, 326-27 (1998). The error or errors must be so fundamental to the integrity of the judicial process that the trial court could not cure the error or errors by sustaining an objection or instructing the jury to disregard the errors. *Shaw*, 186 Ill. 2d at 327.

In this case, we cannot say that the evidence was closely balanced. A witness to the robbery made an in-court identification of the defendant. The same witness also identified the license plate and vehicle used in the robbery, and evidence adduced at the trial showed that the vehicle had been rented to the defendant during the time period the robbery took place. The victim also made an in-court identification of the defendant and the weapon found in the defendant's vehicle. The detectives testified that the defendant confessed to the robbery, and as discussed above, the confession was properly admitted into evidence. Therefore, the defendant's conviction will not be overturned based on the alleged prosecutorial misconduct unless the alleged misconduct is of such a magnitude that the defendant was denied a fair trial. We address the alleged errors in turn.

First, the defendant argues that it was improper for the prosecutor, during his opening statement, to state to the jury that the defendant "used his own inclinations" to rob the Raceway because he was "having a bad day." Opening statements are intended to advise the jury of what each party expects the evidence to prove, including a discussion of reasonable inferences to be drawn from the evidence. *People v. Kliner*, 185 Ill. 2d 81 (1998). The remark of the prosecutor that the defendant "used his own inclinations" to commit the robbery because he was "having a bad day" was made in the context of explaining that the defendant confessed that he committed the robbery because he had been fighting with his wife that day. The defendant argues that this was improper argument regarding the defendant's propensity to commit the crime. But after considering the argument in context, we cannot say that the trial court could not have corrected any error by sustaining an objection or instructing the jury to disregard the comment.

Second, the defendant argues that the prosecutor's statement that the defendant "plea bargained" with detectives by confessing in hopes for a better deal was reversible error. Evidence adduced at the trial by the defense established that the defendant asked the detectives whether he would get a better deal in Madison County following his confession. The defendant contends the prosecutor's statement

characterizing this statement by the defendant as "plea bargaining" was a direct violation of Illinois Supreme Court Rule 402(f) (177 Ill. 2d R. 402(f)), because this discussion between the defendant and the detectives was inadmissible as a "plea discussion." However, as recognized by the Illinois Supreme Court, before a discussion can be characterized as an inadmissible plea-related discussion, it must contain the rudiments of the negotiation process. *People v. Hart*, 214 Ill. 2d 490, 503 (2005). As in *Hart*, the defendant did not ask the detective to contact the State's Attorney's office in Madison County or convey any proposed terms of a plea agreement. He never intimated that he was willing to plead guilty and never discussed pleading guilty with the detective. *Hart*, 214 Ill. 2d at 511. The defendant simply asked the detective if he would get a better deal in Madison County. Therefore, under *Hart*, the evidence regarding the defendant's discussion with the detective was not inadmissible under Illinois Supreme Court Rule 402(f).

Having established that the evidence adduced at the trial was not inadmissible under Illinois Supreme Court Rule 402(f), the question then becomes whether the prosecutor's characterization of this discussion as a "plea bargain" rises to the level of plain error. As we previously stated, we do not find the evidence in this case to be closely balanced. Accordingly, we examine the prosecutor's characterization only to determine whether it was of such a magnitude that it deprived the defendant of a fair trial. Toward this end, we find that the prosecutor only made this remark once and that the jury was instructed to disregard statements made in closing argument not based on the evidence. See *People v. Moore*, 171 Ill. 2d 74, 100 (1996). Furthermore, had the comment been objected to at the trial, an instruction to the jury to disregard the comment would have cured the error. Accordingly, although we find that the prosecutor made a mischaracterization of the evidence as a "plea bargain," this mischaracterization does not rise to the level of plain error.

Third, the defendant contends that the prosecutor's statement, "If we can't convict the defendant on this type of evidence, I don't know what kind of case we could ever bring in front of a jury," was contrary to established precedent and constituted reversible error. Specifically, the defendant argues that this comment amounted to an urging that the jurors' oaths required a conviction, that future cases would be hampered by an acquittal, and that a conviction was required to show support for the authorities. See *People v. Castaneda*, 299 Ill. App. 3d 779, 783 (1998); *People v. Threadgill*, 166 Ill. App. 3d 643, 648-49 (1988); *People v. Slaughter*, 84 Ill. App. 3d 88, 94 (1980). We decline to attach the meaning to these statements that the defendant suggests.

The jury was instructed that opening statements and closing arguments were not evidence, and this comment on the overwhelming nature of the evidence against the defendant does not amount to plain error that could not have been corrected by the sustaining of an objection or by a jury instruction.

Fourth, the defendant urges the court to consider the prosecutor's statement that "if the shoe fits you cannot acquit" as a statement to the jury that the burden of proof was reversed and/or a statement to remind the jury of the O.J. Simpson case calculated to arouse the passions of the jury regarding an acquittal that caused widespread anger. We decline to attach the meaning to this statement that the defendant suggests. In context, the prosecutor was rebutting defense counsel's claim in argument that the man who the defendant claimed borrowed the rental car had shoes that matched the shoes worn by the suspect in the surveillance video. We find that this statement did not amount to plain error. We also decline to consider the cases cited by the defendant regarding prior cases involving this prosecutor, because they have no relevancy to the case at bar. We find it sufficient to say that, even when the statements are taken together, the alleged misconduct of the prosecutor in this case does not rise to the level of plain error. In addition, because we find that even if trial counsel had objected to these statements by the prosecutor, there is no reasonable probability that the outcome of the trial would have been different, we decline to find that trial counsel was ineffective in this regard. See *Strickland v. Washington*, 466 U.S. 668, 694, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068 (1984); *People v. Albanese*, 104 Ill. 2d 504, 525 (1984).

■ Finally, the defendant argues that trial counsel made assertions in his opening statement and closing argument that were not supported by the evidence presented and that this shows ineffective assistance of trial counsel by his failure to prepare for the trial. In his opening statement and closing argument, defense counsel pointed to the fact that the initial police report contained a description that the suspect was in his twenties, while the defendant was in his forties. We find that evidence of this discrepancy was presented at the trial. During trial counsel's cross-examination of the lead detective, the detective admitted that the original description of the suspect was a man in his twenties. The defendant makes much of the fact that trial counsel was unable to elicit an admission of this description from the witness or the victim. However, we find that trial counsel attempted to elicit this information from the witnesses, and even if trial counsel had conducted a pretrial interview of these witnesses and discovered prior to the trial that they would not admit to having given that descrip-

tion, it would still be objectively reasonable for trial counsel to present the evidence through the lead detective and make mention of the discrepancy during arguments. The defendant's claim of ineffective assistance of counsel in this regard also fails both prongs of the *Strickland* test. *Strickland v. Washington*, 466 U.S. 668, 694, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068 (1984); *People v. Albanese*, 104 Ill. 2d 504, 525 (1984).

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

DONOVAN and WELCH, JJ., concur.