NOTICE

Decision filed 11/08/19. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2019 IL App (5th) 160280-U

NO. 5-16-0280

IN THE

NOTICE

This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 15-CF-937 |
| | ) | |
| ERIC TUCKER, | ) | Honorable |
| | ) | Zina R. Cruse, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Justices Moore and Wharton[*] concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's conviction affirmed where there was no violation of defendant's constitutional right to a speedy trial.

¶ 2    Defendant, Eric Tucker, was convicted of first-degree murder and sentenced to 20 years' imprisonment following a stipulated bench trial in the circuit court of St. Clair County. He appeals the conviction and sentence, arguing that his constitutional right to a speedy trial was violated. We affirm.

---

[*]Justice Chapman was originally assigned to participate in this case. Justice Wharton was substituted on the panel subsequent to Justice Chapman's retirement and has read the briefs and listened to the recording of oral argument.

¶ 3                    I. Background

¶ 4     Before reciting the facts necessary to our disposition of this appeal, we note that the dispositive issue relates to the dismissal of the original charges brought against defendant for the double homicide of Darnell Turner and Araybia Moore in docket number 10-CF-598, as well as the subsequent reinstatement of the same charges in docket number 15-CF-937. The record on appeal contains both the common law record and transcripts from the latter proceedings (15-CF-937) but does not contain the common law record or transcripts from the original proceedings (10-CF-598). Consequently, the following facts, including those relating to the original charges brought against defendant, will be recited in the order they appear in the record on appeal.

¶ 5     On August 5, 2015, an assistant state's attorney (ASA) and a special agent with the Illinois State Police signed a sworn criminal complaint (15-CF-937) charging defendant with two counts of first-degree murder (720 ILCS 5/9-1 (West 2010)) for knowingly shooting both Turner and Moore in the head with a gun causing both of their deaths on June 13, 2010. Based on these charges, a warrant was issued for defendant's arrest on the same date.

¶ 6     On August 7, 2015, defendant was arrested and taken into custody. The following day, defendant appeared in court before the Honorable Patricia Kievlan. At defendant's request, the circuit court appointed a public defender to represent him.

¶ 7     On August 14, 2015, defendant was charged by criminal indictment with the same offenses and appeared in court before the Honorable Stephen Rice for an arraignment hearing. A public defender was again appointed to represent defendant, and defendant

entered a plea of not guilty. The matter was set for trial and a status hearing was scheduled for August 19, 2015.

¶ 8   On August 19, 2015, defendant, along with court-appointed counsel, appeared before the Honorable Zina Cruse. The State represented that the parties had agreed to continue "the new matters" charged in docket number 15-CF-937, tolling defendant's speedy-trial time. In response, defense counsel stated that, although defendant was agreeing to toll the speedy-trial time, counsel anticipated filing "a motion claiming that the State ha[d] already violated [defendant's] speedy trial rights based on hi[m] having filed a motion for speedy trial based on these same allegations when it was previously charged." The State indicated that it would not attempt to use the "by-agreement continuance to undercut [defendant's] arguments on the other issue from the 10-CF prosecution." At the conclusion of the hearing, the court signed a written order indicating that defendant's speedy-trial rights had been tolled by an agreed continuance to September 21, 2015, and a status hearing was set for that date.

¶ 9   On September 21, 2015, defendant, along with defense counsel, appeared in court before the Honorable Jan Fiss. A written order was entered reflecting the parties' agreement that "the discovery provided by the [State] in Case No. 10-CF-598 shall be considered discovery in the [present] matter and need not be re-tendered" by the State. The parties also agreed to continue the matter to October 19, 2015, which, again, tolled the speedy-trial time.

¶ 10   On October 19, 2015, a status hearing was held before the Honorable Zina Cruse. Pursuant to a written order entered on that date, the State and defendant were engaged in

ongoing negotiations regarding a plea deal. Accordingly, the matter was continued, by agreement, to November 9, 2015, which, again, tolled the speedy-trial time.

¶ 11 On November 9, 2015, defendant filed a motion to dismiss for a violation of his statutory speedy-trial right, or in the alternative, for a violation of his constitutional speedy-trial right. Attached as defendant's exhibits were several documents from the original proceedings (10-CF-598), which included the State's motion for dismissal of the original charges with leave to reinstate and the circuit court's order dismissing the charges with leave to reinstate on "the motion of the State to *nolle pros* the charges against the defendant."

¶ 12 In his motion, defendant made the following factual allegations. He was initially indicted for the double homicide of Turner and Moore on July 16, 2010. While defendant sat in jail on the pending charges, the case was delayed on several occasions. One delay in the case was attributable to defendant obtaining new counsel, while additional delays occurred when the case was reassigned to a new ASA and trial judge. A firm trial date was set for February 24, 2014, giving both sides time to analyze the voluminous discovery and hours of videotaped evidence. As the trial date neared, and the case was approaching the four-year mark, the case was again reassigned to another ASA, and, 10 days before trial, "a seasoned" ASA, Jon Allard, was assigned to serve as second chair in the prosecution of the case. Defendant arrived at the courthouse ready for his trial on February 24, 2014, but the State moved to dismiss the case with leave to reinstate. Before the circuit court ruled on the State's motion, defendant filed a motion for speedy trial pursuant to section 103-5 of the Code of Criminal Procedure of 1963 (725 ILCS 5/103-5

(West 2012)). Defense counsel also went on the record to "further specify [defendant's] firm demand for trial" and voice "his strong suspicion that the State's dismissal with leave to reinstate was a continuance tactic, [*sic*] and proffered the reasons for that suspicion."

¶ 13    Defendant further alleged that, following the circuit court's dismissal of the case, the State took steps to better the prosecution of the case and to correct mistakes identified by ASA Allard including the testing of certain evidence and efforts to secure cooperation from Larry McCaleb Jr., a key witness in the State's case. McCaleb Jr. had not been "a particularly cooperative witness for the State in the days leading up to [defendant's] scheduled trial." Around the time the charges were dismissed against defendant, the State charged McCaleb Jr. with the same offenses, and he sat in jail until he was released on home detention following the execution of a plea agreement requiring him to testify against defendant.

¶ 14    After setting out these facts, defendant made the following arguments in support of his motion to dismiss. First, he argued that his statutory speedy-trial rights had been violated because the speedy-trial time set forth in the statute was not tolled when the State struck the charges with leave to reinstate. Second, he argued that, if the State's dismissal was classified as a *nolle prosequi*, his constitutional speedy-trial rights had been violated because the State dismissed the charges "to obtain a tactical advantage." However, defendant requested that the circuit court set the matter for hearing to develop a record "regarding the State's motivations for dismissing this case." Following a status

5

hearing that same day, the circuit court continued the case, by agreement of the parties, to January 11, 2016. The case was set for a hearing on defendant's motion to dismiss.

¶ 15 On January 5, 2016, the State filed a response to defendant's motion to dismiss, arguing that its dismissal of the charges was properly characterized as a *nolle prosequi*, which tolled the statutory speedy-trial time. In support, the State emphasized that the circuit court's order classified the State's motion as a motion to nol-pros the charges when it dismissed charges with leave to reinstate. The State also emphasized that because defendant's bond was cancelled and he was released from custody on the charges on February 24, 2014, his speedy-trial demand had no effect. The State, relying on *People v. Norris*, 214 Ill. 2d 92, 104 (2005), further argued that it was not barred from proceeding on the refiled charges against defendant because defendant had made no showing of harassment, bad faith, or fundamental unfairness.

¶ 16 Next, the State argued that defendant's constitutional right to a speedy trial was not violated for several reasons. First, the State asserted that the delay between defendant's initial arrest to the dismissal of the original charges was largely attributable to agreed continuances or continuances on defendant's own motion. Second, the State contended that defendant did not assert his speedy-trial right until the date the State sought to dismiss the charges. Lastly, the State asserted that it dismissed the case to obtain a cooperation agreement with key witnesses and to conduct further testing on physical evidence.

¶ 17 On January 21, 2016, after the motion hearing was rescheduled by agreement of the parties, defendant filed a supplemental motion to dismiss, clarifying that the

6

"constitutional claim being raised by the [d]efendant is that the State used its power to *Nolle Pros* to gain tactical advantage and to avoid statutory speedy trial limitations." Defendant alternatively argued that, in the event the circuit court concluded "that constitutional speedy trial is inapplicable because the [d]efendant was not charged during relevant time periods," his constitutional right to due process was violated by the State's strategic use of the dismissal.

¶ 18  On February 3, 2016, the State filed a response to defendant's supplemental motion to dismiss, arguing that defendant's constitutional right to due process had not been violated by the dismissal. Specifically, the State argued defendant could not show that he had suffered actual and substantial prejudice by the delay between the dismissal and refiling of the same charges. The State also argued that the delay was reasonable and necessary.

¶ 19  On March 1, 2016, the circuit court entered an order resetting the hearing on defendant's motions to dismiss for April 14, 2016, by agreement of the parties, tolling his speedy-trial time. The order included a notation that defendant was scheduled to be sentenced in federal court on March 31, 2016.

¶ 20  On April 14, 2016, the circuit court held a hearing on defendant's motions to dismiss. At the outset of the hearing, the court, by agreement of both parties, took judicial notice of the entirety of the file in docket number 10-CF-598 and admitted defendant's exhibits. Defendant's exhibits consisted of several filings from docket number 10-CF-598, including a scheduling order, the State's motion for dismissal with leave to

7

reinstate, and the court's order dismissing the case, as well as the report of the proceedings from February 24, 2014, in docket number 10-CF-598.[1]

¶ 21 The scheduling order, dated June 10, 2013, reflects that the circuit court continued the matter on defendant's motion without objection from the State and set the matter for trial on February 24, 2014. The order also reflects that the deadline for discovery was set for September 20, 2013, the deadline for dispositive motions was set for November 15, 2013, and the deadline for hearings on any dispositive motions was set for January 15, 2014. In addition, the phrase "speedy trial tolled" was included at the bottom of the order.

¶ 22 In the State's motion for dismissal with leave to reinstate, dated February 24, 2014, the State sought "dismissal of the charges contained herein, with leave to reinstate." However, in the corresponding written order, also dated February 24, 2014, the court granted "the motion of the State to *nolle pros* the charges against the defendant" and dismissed the charges against defendant "with leave to reinstate."

¶ 23 The report of proceedings from February 24, 2014, provides the following details. At the outset, the State presented to the circuit court a proposed order dismissing the case with leave to reinstate. At the court's direction, the State also prepared a written motion seeking dismissal of the charges against the defendant with leave to reinstate. Defense counsel presented to the court a motion demanding a speedy trial. The parties were then provided the opportunity to present arguments on these filings.

---

[1]Defendant admitted a total of eight exhibits at the hearing; however, we recite the facts from these exhibits only as they pertain to the issues on appeal. We also note that the names and case numbers on two of the exhibits have been redacted and appear to involve an entirely different case.

8

¶ 24    Defense counsel, anticipating that the State would reinstate the charges against defendant in the future, asserted that the defense was prepared to proceed to trial and reiterated that defendant had been in jail for 1344 days awaiting his day in court. Defense counsel also stated that the State's dismissal came after the following notable events: defendant refusing the State's plea offer, indicating that he wanted his day in court; failed attempts at further negotiations; and the circuit court's favorable rulings on defendant's motion to suppress certain statements made by defendant and on motions *in limine* the week before the State sought dismissal. As a final point, defense counsel noted that the second ASA, who had been assigned to the case a week to 10 days prior to the scheduled trial date, would not have been prepared to go to trial.

¶ 25    In response, the State asserted that the case had been continued "no less than 16 times, all on motion of the defendant." According to the State, the case was "around [d]ay 58 or 59 of the speedy trial counter." The State also asserted that the scheduling order had been filed with the circuit court in June 2013, which continued the matter on defendant's motion. Defense counsel then responded by asserting that, in June 2013, he had to beg the court to set the case in 2014 because preparation would take months and he had come into the case late. Following defense counsel's response, the court signed the order prepared by the State, dismissing the charges against defendant with leave to reinstate and canceling defendant's bond.

¶ 26    After the circuit court admitted the exhibits, the defense called ASA Kristi Flint, who testified to the following details. She worked as an ASA in St. Clair County from March 2013 to August 31, 2014. In March 2013, she was assigned to the violent crime

9

unit as a prosecuting attorney and became involved in defendant's case. Shortly thereafter, the case was assigned to a new judge. In June 2013, the parties appeared before the newly assigned judge for a case management conference. At the conference, both parties requested a continuance because neither party was prepared to go to trial on the set date. Both parties advised the judge that the discovery in the case was voluminous and extensive, as it involved a major case squad investigation. The judge reluctantly granted a continuance and agreed to set the trial date for February 24, 2014, giving both parties approximately eight months to prepare.

¶ 27 ASA Flint began to "ramp up preparations" for the trial in January 2014. In February 2014, ASA Allard was assigned as ASA Flint's second chair at trial. ASA Flint discovered potential issues with the case and discussed these issues with the office both before and after ASA Allard was assigned to the case. The major problem arose with the eyewitnesses to the murder, McCaleb Jr. and Kevin Clark, in that they were uncooperative and unwilling to testify. After she was unsuccessful in communicating with these witnesses, ASA Flint spoke with the witnesses' family members and possibly a girlfriend. Based on these communications, ASA Flint learned that the witnesses were not going to testify at trial. Shortly before defendant's scheduled trial date, McCaleb Jr. was charged with the murder of the same two individuals. ASA Flint recalled that additional scientific testing could have been performed on several pieces of physical evidence, but she did not view this as a major problem because she believed the eyewitness testimony would be sufficient to prove the case. Following the dismissal of the charges, additional testing was performed on the evidence and McCaleb Jr. executed

10

a cooperating plea agreement. When ASA Flint filed the motion to dismiss, she intended to refile the charges against defendant.

¶ 28    On cross-examination, ASA Flint clarified that she did not intend to bring the "2010 case back to life" but, instead, planned on filing a new complaint. Prior to seeking dismissal of the case, ASA Flint notified opposing counsel of her intention to file the motion to dismiss. Defendant had not demanded a speedy trial before February 24, 2014, and she believed the case was on "Day 58 or 59." Flint explained that she wanted to prosecute the case but could not "knowing that we only got one bite at the apple."

¶ 29    Next, the defense called ASA Allard, who testified to the following. ASA Allard started working in the St. Clair County State's Attorney's office in 1996. He was assigned as ASA Flint's co-counsel in defendant's case shortly before trial and noticed several "red flags" after he reviewed the file. First, he believed there was sufficient evidence to charge McCaleb Jr. under a theory of accountability. Despite having a subpoena, it was unclear whether McCaleb Jr. would appear to testify at trial because no one had been able to contact him. In ASA Allard's opinion, the case was not ready to proceed to trial because there were things that could be done to strengthen the evidence. After McCaleb Jr. was charged, a cooperation agreement was entered in which he agreed to testify at defendant's trial. ASA Allard also believed additional evidentiary items should have been subjected to scientific testing prior to trial.

¶ 30    During the State's closing argument, the circuit court inquired whether the State was "manipulating" the court's docket when it dismissed the charges with the intent to refile. In response, the State represented that it had balanced the seriousness of the

11

offense with the evidentiary issues and determined that the prudent course of action was to dismiss the case rather than ask for a continuance that it may not have been able to meet. The State also asserted that it had an ethical obligation to release defendant until it had secured enough evidence. The State denied that it had dismissed the case to evade defendant's speedy-trial rights, noting that defendant had not made a speedy-trial demand before the State sought to dismiss the case. The court then asked if the State thought it could hold the court hostage due to its "failure to be diligent in [its] prosecution." The State asserted that there was no indication that the witnesses were uncooperative until the trial date neared, and that it felt it could not move forward without the witnesses' testimony in a case involving such serious offenses. After hearing the parties' arguments, the court took the motions under advisement.

¶ 31    On April 18, 2016, the circuit court issued its findings and written order. The court determined that, following the dismissal of the original charges against defendant, "formal prosecution no longer existed; therefore, the demand for speedy trial had no effect." The court then applied the four-factor test set out in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), to determine whether there was a violation of defendant's constitutional speedy-trial right. In doing so, the court found that the length of the delay between defendant's arrest and trial, which was more than five years, was presumptively prejudicial and, thus, required consideration of the remaining factors.

¶ 32    The court next found that the reasons for the delay in the original proceedings indicated nothing deliberate nor negligent on the part of the State. The court noted that the original proceedings were continued approximately 12 times on defendant's motion,

twice by agreement, and twice by the court. The court further found that defendant did not assert his right to a speedy trial until the State sought to dismiss the charges on February 24, 2014; there was no evidence that defendant's right to a fair trial was affected; and defendant did not suffer substantial prejudice by losing an advantage over the State due to the State's inadequate preparation for trial.

¶ 33 As a final matter, the court considered whether the delay violated defendant's constitutional right to due process. The court, citing *People v. Sanders*, 86 Ill. App. 3d 457, 472 (1980), determined that this required a showing that the delay " 'caused substantial prejudice to the defendant's right to a fair trial and that the delay was an intentional device to gain a tactical advantage over the accused.' " The court found that, although defendant established intentional tactical maneuvering of the court's schedule, it was questionable whether the State used the dismissal to gain an advantage over defendant. Nevertheless, the court found that defendant had failed to establish a substantial prejudice to his right to a fair trial. Accordingly, the court denied defendant's motions to dismiss.

¶ 34 On June 27, 2016, pursuant to negotiations, the State dismissed the criminal indictment and filed a criminal information charging defendant with one count of first-degree murder for the shooting death of Moore. Defendant waived his right to a jury trial and the case proceeded to a stipulated bench trial. Defendant was found guilty and sentenced to 20 years' imprisonment. This appeal followed.

¶ 35                                    II. Analysis

¶ 36    On appeal, defendant asserts that his constitutional speedy-trial rights were violated when the State dismissed the original charges approximately 43 months after he was taken into custody and refiled the same charges 18 months after the dismissal. He claims that the circuit court incorrectly applied the law and failed to consider the 18-month delay when it denied his motion to dismiss.

¶ 37    "When resolving a constitutional speedy-trial claim, any factual determinations made by the [circuit] court, which are contained in the record, shall be upheld on review unless they are against the manifest weight of the evidence." *People v. Crane*, 195 Ill. 2d 42, 51 (2001). However, "the ultimate determination of whether a defendant's constitutional speedy-trial right has been violated is subject to *de novo* review." *Id*. at 52.

¶ 38    "The right to a speedy trial is guaranteed by the Federal and Illinois Constitutions (U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8)." *People v. Staten*, 159 Ill. 2d 419, 426 (1994). A sixth amendment right to a speedy trial is made applicable to the states by the due process clause of the fourteenth amendment. *Klopfer v. North Carolina*, 386 U.S. 213 (1967). In Illinois, a criminal defendant also has a statutory right to a speedy trial. 725 ILCS 5/103-5 (West 2010). However, "[t]he constitutional and statutory rights to a speedy trial are not necessarily coextensive." *People v. Kilcauski*, 2016 IL App (5th) 140526, ¶ 19 (citing *People v. Campa*, 217 Ill. 2d 243, 250 (2005)). Notably, a claimed violation of a defendant's statutory speedy-trial right calls for counting days in custody, whereas, "analysis of whether a Constitutional right to speedy trial has been abridged calls for a 'functional analysis in the particular context of the case.' " *People v.*

14

*Clark*, 188 Ill. App. 3d 130, 134 (1989) (quoting *Barker v. Wingo*, 407 U.S. 514, 522 (1972)).

¶ 39    In this appeal, the sole issue before this court is whether defendant's constitutional speedy-trial right has been violated.[2] Accordingly, we need not calculate the specific number of days defendant spent in custody; instead, we consider the specific circumstances presented in this case and apply the four-factor balancing test set out in *Barker*. See *Crane*, 195 Ill. 2d at 52. Courts consider the following four factors in determining whether a defendant's constitutional speedy-trial right has been violated: (1) the length of the delay; (2) the reasons for the delay; (3) a defendant's assertion of his right; and (4) the prejudice, if any, to a defendant. *People v. Kaczmarek*, 207 Ill. 2d 288, 294-95 (2003) (citing *Barker*, 407 U.S. at 530). "All four factors are closely related and no one factor is necessary or sufficient to a finding that the right to a speedy trial has been violated." *Crane*, 195 Ill. 2d at 52 (citing *Barker*, 407 U.S. at 530-33). "Because of the seriousness of the remedy—'a defendant who may be guilty of a serious crime will go free, without having been tried'—the right to a speedy trial should always be in balance, and not inconsistent, with the rights of public justice." *Id.* at 47 (quoting *Barker*, 407 U.S. at 522).

¶ 40    "When assessing a constitutional speedy-trial claim, the first consideration is the length of the delay." *Kaczmarek*, 207 Ill. 2d at 295. As an initial matter, a court should

_____

[2]As noted, defendant initially sought to dismiss the case based on violations of both his statutory (725 ILCS 5/103-5 (West 2010)) and constitutional speedy-trial rights. He also filed a supplement to his motion, in which he sought dismissal for a violation of his constitutional right to due process in the event the circuit court found that the speedy-trial time was tolled because the State sought dismissal by *nolle prosequi*. However, the sole issue raised by defendant on appeal is whether there was a violation of his constitutional right to a speedy trial.

consider whether the length of the delay is presumptively prejudicial. *Crane*, 195 Ill. 2d at 52. "A finding of 'presumptive prejudice,' however, does not imply that the delay will be found to have actually prejudiced the defendant." *Id.* at 53 (quoting *Doggett v. United States*, 505 U.S. 647, 652 (1992)). Instead, "the first factor has a triggering function, and unless a presumptively prejudicial period of delay occurs, a court need not conduct the remainder of the analysis." *People v. Silver*, 376 Ill. App. 3d 780, 784 (2007) (citing *People v. Makes*, 103 Ill. App. 3d 232, 236 (1981); *People v. Belcher*, 186 Ill. App. 3d 202, 206 (1989)). "If the length of the delay is presumptively prejudicial, the court should go on to balance the remaining three factors." *Id.* (citing *Belcher*, 186 Ill. App. 3d at 206). "In general, courts have recognized a delay approaching one year to be 'presumptively prejudicial.' " *Crane*, 195 Ill. 2d at 52-53 (citing *Barker*, 407 U.S. at 530-31; *People v. Lock*, 266 Ill. App. 3d 185, 191 (1994)).

¶ 41    Here, defendant asserts, and the State concedes, the length of the delay is over one year. Defendant was originally charged by indictment on July 16, 2010, and he was not brought to trial until June 27, 2016. Thus, the length of the delay is sufficient to trigger application of the remaining *Barker* factors.

¶ 42    In considering the second factor, we must examine the reasons for the delay. *Crane*, 195 Ill. 2d at 53. A defendant need only demonstrate that the delay was not attributable to his actions. *People v. O'Quinn*, 339 Ill. App. 3d 347, 354 (2003). The State bears the burden of providing justification for any delay, and any reasons which may be offered to explain a delay are assigned different weights. *Crane*, 195 Ill. 2d at 53 (citing *People v. Singleton*, 278 Ill. App. 3d 296, 299 (1996); *Barker*, 407 U.S. at 531).

16

Specifically, evidence that the State intentionally delayed prosecution to gain a tactical advantage will weigh heavily against the State, while faulty police procedure, negligence, or incompetence, though still charged against the State, will be weighed less heavily. *Id.* (citing *People v. Wills*, 153 Ill. App. 3d 328 (1987); *Singleton*, 278 Ill. App. 3d at 300; *People v. Williams*, 299 Ill. App. 3d 143, 148 (1998)). Other reasons for delay, including the unavailability or inability to locate a competent witness, are usually found to be valid explanations that justify a reasonable period of delay. *Id.* at 53-54 (citing *People v. Sanders*, 86 Ill. App. 3d 457 (1980)).

¶ 43    Here, the State provides different reasons for certain periods of the delay. The State asserts the initial period of approximately 43 months between the original charges and the *nolle prosequi* should weigh against defendant. The State notes that, in denying defendant's motion to dismiss, the circuit court found that the original proceedings were continued 12 times on defendant's motion, twice due to the court's unavailability, and twice by agreement. Defendant acknowledges in his reply brief that the "continuances in the first 43 months were not in dispute; had the State been prepared for trial, there would have been no speedy trial issues." The State also asserts that most of the 10-month period between the second indictment and bench trial should weigh against defendant. While the State admits responsibility for three months of this delay, it asserts, and the record supports, that defendant shares responsibility for the remainder of the delay because the case was continued by agreement on several occasions. Consequently, we conclude that most of the delay during these periods is attributable to defendant.

17

¶ 44    Defendant's primary argument is based on the 18-month period between the State's *nolle prosequi* of the original murder charges and subsequent refiling of the same charges. The State asserts that this period should not be weighed in a speedy-trial analysis.

¶ 45    Our colleagues in the Second District considered a similar issue in *People v. Totzke*, 2012 IL App (2d) 110823. In that case, the Second District noted that the constitutional right to a speedy trial "applies only within 'the confines of a formal criminal prosecution,' that is, once a defendant has been arrested or charged." *Id.* ¶ 19 (quoting *Doggett*, 505 U.S. at 655). The Second District also noted that the constitutional right to a speedy trial does not apply after the State, " 'acting in good faith,' " formally drops charges, and any undue delay after charges have been dropped " 'must be scrutinized under the Due Process Clause, not the Speedy Trial Clause.' " *Id.* ¶ 22 (quoting *United States v. MacDonald*, 456 U.S. 1, 7 (1982)). The Second District further noted that "[i]f the *nolle prosequi* is taken in good faith, the constitutional speedy-trial guarantee does not apply during the period of time between the *nolle prosequi* and the new indictment." *Id.* ¶ 24 (citing *Sanders*, 86 Ill. App. 3d at 469). In applying these principles, the Second District concluded that, "although the delays that occurred *during* the two prosecutions could be considered under a speedy-trial analysis, only a due process analysis applied to the 285-day delay between the *nolle prosequi* and the defendant's indictment." (Emphasis in original.) *Id.* ¶ 25.

¶ 46    Here, the State dismissed the case and defendant was released for a period of 18 months. Defendant acknowledges that he was not formally charged during this period but

18

argues that the 18 months should be considered in the constitutional speedy-trial analysis because the State was not acting in good faith when it dismissed the charges. The State asserts, and the record supports, that it decided to dismiss the case because it needed additional time to obtain cooperation agreements from uncooperative witnesses and to conduct additional testing on the physical evidence. Although the State's dismissal came on the scheduled trial date, the State believed, and defendant did not contest, that only 58 or 59 of the 120 days of that statutory speedy-trial time period had elapsed. The record shows that the State advised defense counsel of its intention to dismiss the charges prior to the trial, which prompted defendant to file his first speedy-trial demand. Under these circumstances, we conclude that the State dismissed the charges against defendant in good faith and, thus, the 18-month period should not be considered in our analysis of this issue. Because most of the delay is attributable to defendant, we conclude that this factor weighs against him.

¶ 47     We next consider whether defendant asserted his right to a speedy trial. *Sanders*, 86 Ill. App. 3d at 471. As noted, defendant filed his first speedy-trial demand on the same date the State filed its motion seeking the circuit court's approval to dismiss the charges by *nolle prosequi*. After the court granted the State's motion, no charges were pending against him. "While such a demand may have been effective if defendant had remained in custody or had been released on bail, here he was under no restraint or charge and the demand to be tried on nonexistent charges must be considered ineffective." *Id*. Moreover, defendant did not file his motion to dismiss on speedy-trial grounds until three months after his arrest, and he shared in the responsibilities for the subsequent delays by agreeing

19

to continuances. Under these circumstances, we conclude that this factor weighs against defendant.

¶ 48    Lastly, we consider the prejudice suffered by defendant as a result of the delay. Unlike a finding of presumptive prejudice, courts considering the fourth factor assess prejudice "in the light of the interests of defendants which the speedy trial right was designed to protect." *Barker*, 407 U.S. at 532. The right was designed to prevent oppressive pretrial incarceration, minimize a defendant's anxiety and concern, and limit the possibility that the defense may be impaired. *Sanders*, 86 Ill. App. 3d at 472 (citing *Barker*, 407 U.S. at 532). Although defendant was in custody for approximately 43 months prior to the *nolle prosequi* and for approximately 10 months following his second arrest, he does not dispute that most of the delays during these periods are attributable to him. Following the *nolle prosequi*, he was released for 18 months with no charges pending against him. While defendant argues he had anxiety over the State recharging him for the offenses during this period, our supreme court has noted "that this factor is present to some extent in every case and absent some unusual showing, this inconvenience alone is of slight import." *Kaczmarek*, 207 Ill. 2d at 300. We find it significant that defendant has failed to specify how his ability to prepare his defense was impaired or adversely affected by the delay in trying the murder charge—the most serious interest the speedy-trial right was designed to protect. See *Doggett*, 505 U.S. at 654.

¶ 49    After carefully examining the record and after considering each factor, we conclude that defendant was not denied his constitutional right to a speedy trial. While

20

we agree that the delay was indeed lengthy, we must also balance defendant's speedy-trial right with the rights of public justice. See *Crane*, 195 Ill. 2d at 62. Defendant, here, was originally charged with the murder of two individuals and was released from custody for an 18-month period between the State's *nolle prosequi* and his arrest after the State refiled the charges. Uncertain of its ability to secure convictions, the State dismissed the charges after learning shortly before trial that two key witnesses, who were subpoenaed to testify, were uncooperative and may not appear at trial. Additionally, the State determined that additional forensic testing of the physical evidence was necessary. Under these circumstances, we cannot say that the delay amounts to a constitutional violation warranting the "severe remedy of dismissal of the indictment when the right has been deprived." *Barker*, 407 U.S. at 522. Therefore, we hold that defendant was not denied his constitutional right to a speedy trial.

¶ 50                                   III. Conclusion

¶ 51    For the foregoing reasons, the judgment of the circuit court of St. Clair County is hereby affirmed.


¶ 52    Affirmed.

21